Michael BREZENSKI, Appellant
(at 746),

v.

WORLD TRUCK TRANSFER, INC.,
and Rodney O. Crew, Appellee.

Pamela McMahon, as Executrix of the Estate of Michael McMahon and Pamela McMahon in the Superior Court of Pennsylvania, Appellant (at 747),

v.

World Truck Transfer, Inc., and Rodney O. Crew, Appellee.

Superior Court of Pennsylvania.

Argued Nov. 16, 1999.
Filed June 19, 2000.

Michael J. Pawk, Butler, for appellants.

Timothy D. Appelbe, Pittsburgh, for World Truck, appellee.

Before DEL SOLE, FORD ELLIOTT, JJ., and CIRILLO, President Judge Emeritus.

DEL SOLE, J.:

¶ 1 Presented for our review is an order granting summary judgment to Appellee, World Truck Transfer, Inc. (World Truck). World Truck was named as a defendant in an action seeking recovery for the death of Michael McMahon and for injuries sustained by Michael Brezenski, who were each shot by Rodney Crew, an employee of World Truck.[1] Appellants alleged various causes of action including negligence for the hiring and retention of Rodney Crew, vicarious liability, intentional infliction of emotional distress, and negligent infliction of emotional distress. They now seek re-

---

1. Also named as defendants were Atlas Transfer, Allied Van Lines, Sullivan Moving and Storage Co., Tri–State Semi Driver Training, Inc, Charles Grody, M.D. and Rodney Crew. These parties were all dismissed by means of preliminary objections, consent orders or pursuant to a settlement agreement. The claims raised on appeal concern only defendant World Truck.

view of the trial court's order dismissing these claims. We affirm.

¶ 2 On an appeal from a grant of summary judgment, a reviewing court must examine the record in a light most favorable to the nonmoving party, accepting as true all well-pleaded facts and giving that party benefit of all reasonable inferences which can be drawn from those facts. *Hoffman v. Brandywine Hospital,* 443 Pa.Super. 245, 661 A.2d 397 (1995). The Superior Court will reverse a grant of summary judgment only when the trial court has committed an error of law or abused its discretion. *Butterfield v. Giuntoli,* 448 Pa.Super. 1, 670 A.2d 646 (.1995).

¶ 3 The following facts form the basis of Appellants' claims. In response to a newspaper advertisement, Crew submitted an application for employment as a truck driver in November of 1993 with World Truck. World Truck is in the business of transporting trucks for its customers to various locations throughout the country. After speaking briefly with World Truck's president after completion of the employment application, Crew was hired that same day. World Truck did not conduct any background investigation of Crew before he was hired. The application for employment was incomplete and contained inaccurate information. Only two previous employers were listed without mention of Crew's employment with Atlas Transfer. Further, an employment history was missing for the dates July 1991 to November 1993. It also incorrectly advised that Crew was self-employed from May 1988 to March 1991.

¶ 4 Crew was placed under the supervision of Thomas Pelham for training in Fort Smith, Arkansas. While in Arkansas, Pelham and another World Truck employee, Roland Edward, became aware that Crew possessed a .32 caliber derringer pistol and ammunition. They advised Crew it was against World Truck's policy to possess a firearm and directed him to send the weapon home, although they learned the next day that he failed to heed their directions. On November 19, 1993, Crew left Arkansas for Indiana operating a truck in a three-truck convoy with Pelham and Edwards. Once in Indianapolis, Pelham and Crew were directed to take a flight to Nebraska to transport a customer's truck from there to Medina, Ohio. Knowing that a firearm could not be transported by air, Pelham and Edwards devised a plan to transport it to Medina by truck.

¶ 5 The firearm arrived in Medina as did Crew and Pelham after their drive from Nebraska. On November 22, 1993, Pelham and Crew departed in convoy fashion from Medina traveling to Maryland. Crew became separated from Pelham at the intersection of I–76 and the Ohio Turnpike, with the result that Crew proceeded east on I–80 while Pelham traveled on I–76. Crew became lost and traveled nearly 100 miles before coming to the town of Reynoldsville, Pennsylvania. There, Crew's truck went off the road into the front yard of a home where Pamela and Michael McMahon and their children resided. Crew attempted to free the truck without success. At Crew's request McMahon phoned World Truck and handed the phone to Crew who spoke with the dispatcher and the president. A second telephone call to World Truck was placed by McMahon to advise the company that he had telephoned a tow truck to assist Crew. World Truck advised McMahon that it would pay for the damage to his property. McMahon then left his home, and proceeded outside and across the street to a florist shop. He was standing in the parking lot talking to the owner when Crew shot him twice in the back of the head.

¶ 6 Mrs. McMahon was in her bathroom when she heard a noise that sounded like gunshots. She went outside to the porch and· saw Crew open the door to his truck. Mrs. McMahon went back inside and got ready to leave for work. When she went back outside she saw Crew running down the road. Mrs. Crew looked for her husband and saw an individual pointing to the ground where her husband lay. She pro-

ceeded to the parking lot and found her husband lying on the ground with blood coming from his head. After being transported by ambulance, McMahon died at the hospital.

¶ 7 Appellant Brezenski was traveling in a pick-up truck when he saw Crew cross the road in front of him, raising his arms in a signaling fashion. Brezenski stopped, and Crew opened the passenger door and jumped in the truck. Brezenski observed an ambulance and State Police car as he was driving ahead and heard on his police scanner a broadcast of the shooting incident. Crew produced the weapon and shot Brezenski in the chest. The truck crashed and Brezenski rolled out onto the road, whereupon Crew shot at him once more. Crew then stole another truck and fled the scene, but was eventually arrested after a high-speed chase.

¶ 8 Appellants submitted an expert report which concluded that Crew suffered from chronic paranoid schizophrenia for several years prior to his employment with World Truck, and that this schizophrenia was likely present and evident when he was hired. Another report concluded that Crew had auditory hallucinations and that his family realized he needed treatment and begged him to seek it. Appellants also submitted records which showed that Crew was hired by Atlas Transfer in March of 1989 to work in the warehouse. The record indicated that Crew had a nervous breakdown at work. Crew was fired in February of 1992, after being carried away by a Sheriff. The reports indicated he was suffering from a drug overdose, hallucinating and threatening to kill people. Crew was involuntarily committed to a mental hospital. In November of 1992, police found Crew walking barefoot on a highway in a state of confusion. After being transported to jail he was taken to an emergency room where the hospital records reveal he was "combative and agitated." In September of 1993, Smith Transport hired Crew as a driver trainee. While so employed Crew drove over a lawn in a residential area and received a police citation. His employment lasted only 28 days before he was dismissed for incompetence and mental instability. A witness recalled observing Crew in possession of a derringer pistol while employed with Smith Transport. Crew was hired by World Truck 25 days later.

¶ 9 On the basis of these circumstances Appellants brought an action against World Truck. Among the claims made were that World Truck was responsible under a theory of *respondeat superior* and negligence in the hiring and retention of Crew as an employee. These are two distinct claims.

■ ¶ 10 Under the doctrine of *respondeat superior* recovery is sought on the basis of vicarious liability. An employer is vicariously liable for the wrongful acts of an employee if that act was committed during the course of and within the scope of employment. *Fitzgerald v. McCutcheon*, 270 Pa.Super. 102, 410 A.2d 1270 (1979). This liability may extend even to intentional or criminal acts committed by the employee; however if the act is done for personal reason, or in an outrageous manner, it is not done within the scope of employment. *Id.*; RESTATEMENT (SECOND) OF AGENCY § 228 (1958). Crew's action in this case, shooting two individuals who had no connection to the employer, was outside the scope of Crew's employment. His actions in no way furthered the purpose of his employment, and can only be characterized as outrageous, as well as criminal. World Truck cannot be held responsible under this theory as a matter of law, and the trial court's grant of summary judgment on this claim was proper.

¶ 11 Analysis of the negligence claim brought by Appellants is much more complicated. It has long been the law in this Commonwealth that an employer may be liable in negligence if it knew or should have know that an employee was dangerous, careless or incompetent and such employment might create a situation where

the employee's conduct would harm a third person. *Dempsey v. Walso Bureau, Inc.*, 431 Pa. 562, 246 A.2d 418 (.1968). This common law principle, as applied to an employee acting outside the scope of employment, was later embodied in Section 317 of the Restatement (Second) of Torts which has been adopted in Pennsylvania. *Id.* The necessity to examine a claim of negligent hiring and/or retention with an analysis of both common law and the law as set forth in Section 317 was recently addressed by our Supreme Court in *Hutchison v. Luddy*, 560 Pa. 51, 742 A.2d 1052 (1999).

¶ 12 In *Hutchison* the plaintiff made claims against a number of defendants for the negligent retention and supervision of Father Luddy, a priest who allegedly sexually assaulted the minor plaintiff. In the Opinion Announcing the Judgment of the Court, the Superior Court's decision and its application of only Section 317 to the claim was criticized.[2] Id. at 1052. Case law from this as well as other jurisdictions was initially reviewed. Referenced were the holdings of these decisions which found a defendant potentially negligent if it was established that the employee's propensity for violence was known or should have been known to the defendant and the association between the plaintiff and the employee was occasioned by the employee's work. *Id.* at 1057–59.

¶ 13 The lead Opinion in *Hutchison* concluded that the defendant knew that Luddy had a propensity for pedophilic behav-

ior and knew that his placement provided him with ample opportunity to commit acts of abuse, thus the defendants had a duty to take precaution to prevent any such harm. Because the defendants did not attempt to prevent the foreseeable harm, their inaction was negligent. Justice Newman went on to examine these same claims under Section 317 of the Restatement (Second) of Torts and concluded the requirements of Section 317 were also met.[3]

¶ 14 Generally, to establish a cause of action in negligence, the plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff and the plaintiff suffered an actual loss or damage. *Martin v. Evans*, 551 Pa. 496, 711 A.2d 458 (1998). Under common law there is no duty to control the conduct of a third party to protect another from harm, except where a defendant stands in some special relationship with either the person whose conduct needs to be controlled or in a relationship with the intended victim of the conduct, which gives the intended victim a right to protection. *Emerich v. Philadelphia Center for Human Development*, 554 Pa. 209, 720 A.2d 1032 (1998). Thus, an exception has been carved out for those instances where a special relationship exists between the defendant and the actor or between the defendant and the foreseeable victim of the actor's conduct. *Dunkle v. Food Service East Inc.*, 400 Pa.Super.

**2.** The Opinion Announcing the Judgment of the Court was authored by Justice Newman and joined by Chief Justice Flaherty. Justice Cappy wrote a Concurring Opinion in which he "disassociates" from "that part of the majority opinion that criticizes the Superior Court for focusing on Restatement (Second) of Torts § 317 as the sole basis for recovery." *Id.* at 1062 (Cappy, J., concurring). He noted that the jury was instructed on liability solely pursuant to Section 317. Justice Saylor, in a Concurring Opinion joined by Justice Zappala affirmed the jury's finding of liability under the Restatement (Second) of Torts § 317. In a Dissenting Opinion by Justice Castille, it was noted that through case law, Section 317

has been adopted for determining whether a duty exists. It was further noted that the jury was charged only under Section 317, thus, the Superior Court properly confined its analysis to Section 317.

**3.** At issue in *Hutchison* was application of the facts to Section 317(a)(i), which requires the servant to be upon premises which the servant is privileged to enter only as the master's servant. Because the assault occurred in a motel room, the Court was considering whether the priest was acting as a servant of the master at the time he gained access to the motel room.

58, 582 A.2d 1342 (1990), citing *Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 435, 131 Cal.Rptr. 14, 551 P.2d 334, 343 (1976). An act cannot be negligent unless the harm is foreseeable to the class to which the complaining party belongs. *Commonwealth Dep't of Highways v. Eldridge,* 408 Pa. 391, 184 A.2d 488 (1962).

¶ 15 These general principles parallel the law as set forth in the Restatement. Section 315 of the Restatement (Second) of Torts sets forth a general principle that there is no duty to control the conduct of a third person to prevent others from harm, unless there is a special relationship between the actor and the third person or between the actor and the injured party, which gives that party a right to protection. The comment to Section 315 notes that those situations where a special relationship exists between the actor and the other (injured party) are found in Sections 314A and 320.[4] Those instances where a special relationship exists between the actor (defendant) and the third person (wrongdoer) which are sufficient to impose a duty are set forth in the Restatement in Sections 316–319.[5] Only the application of Section 317 is relevant for the purposes of this case, which sets forth the duties of a master to control the conduct of a servant. It provides:

A master is under a duty to exercise reasonable care so as to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an un-

reasonable risk of bodily harm to them, if

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, and

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should know of the necessity and opportunity for exercising that control.

RESTATEMENT (SECOND) OF TORTS § 317 (1965).

This section of the Restatement recognizes that the general absence of a duty to control others has an exception, which in certain circumstances, will impose a duty upon an employer to control an employee. It sets forth the specific instances where the potential for harm is foreseeable and the ability or necessity for control of the employee exists. That control can include the making of specific demands, or the extreme, but perhaps necessary, measure of termination from employment. *Hutchison v. Luddy,* 742 A.2d at 1062; RESTATEMENT SECOND (OF TORTS) § 317 comment c.

¶ 16 This case involves a situation which calls into play the duty of the master (World Truck) to control the conduct of its servant (Crew) while acting outside the scope of his employment so as to prevent him from intentionally harming others (Appellants). According to the Restate-

---

4. Under Section 314A a special relationship exists which gives rise to a duty to aid or protect between common carriers and passengers, innkeepers and their guests, a possessor of land who holds it open to the public and the public, and one who takes custody of another and the other. Section 320 refers to a duty of a person having custody of another to control the conduct of a third person, such as a sheriff, warden, or teacher, or those in charge of institutions such as a hospital, or asylum. *See* RESTATEMENT (SECOND) OF TORTS

§ 320 comment (a.). These special circumstances are not present in this case.

5. Section 316 concerns the duty of a parent to control a child. Section 317 involves the duty of a master to control the conduct of a servant. Section 318 addresses the duty of a possessor of land or chattel to control the conduct of licensees, and Section 319 explains the duties of those in charge of persons with dangerous propensities.

ment this duty to exercise reasonable care applies where the servant is upon the master's premises or upon premises which he is privileged to enter only as the servant, § 317(a)(i), or where the servant is using the master's chattel, § 317(a)(ii). If either of these situations exists it must be determined if the master knew or had reason to know of his ability to control the servant, § 317(b)(i), and knew or should have known of the necessity and opportunity to exercise that control, § 317(b)(ii).

¶ 17 In this instance Crew was not on World Truck's premises at the time of the attack, nor did he enter other premises based upon a privilege afforded him by World Truck. Neither McMahon nor Brezenski were customers of World Truck, and Crew's contact with them was not related to his job. It also cannot be said that Crew was using his master's chattel at the time he shot McMahon and Brezenski. Crew did not harm these individuals while driving the truck. This is not a case where reckless or unlawful driving was the cause of injuries. The truck was not involved in the shooting. Crew used his own personal gun to shoot and kill McMahon across the street from McMahon's home, in the parking lot of a florist. Any use by Crew of his master's chattel is even more removed from the shooting of Brezenski. Brezenski was shot after Crew fled the scene of the first shooting, flagged down Brezenski and entered his vehicle. Crew was not using "a chattel of his master" during either of these criminal incidents. The truck was merely the means by which Crew traveled to the area; it was not used by Crew to facilitate the shootings. Accordingly, analyzing this case under Section 317 of the Restatement, recovery cannot be had.

¶ 18 Also applicable to this case is Section 213 of the Restatement (Second) of Agency. It provides:

A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

. . . .

in the employment of improper person or instrumentality in work involving risk of harm to others:

in the supervision of the activity;

or in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

RESTATEMENT (SECOND) OF AGENCY § 213 (1958).

¶ 19 With reference to both this section and Section 317 of the Restatement (Second) of Torts, this court most recently commented: "these Restatement sections do no more than to restate the existing tort law of Pennsylvania. They impose on an employer the duty to exercise reasonable care in selecting, supervising and controlling employees." *R.A. v. First Church of Christ*, 2000 PA Super 58, ¶18, 748 A.2d 692 (Pa.Super.2000). The Comment to Section 213 provides that liability under this section "exists only if all the requirements of an action of tort for negligence exist." RESTATEMENT (SECOND) OF AGENCY § 213, comment a.

¶ 20 Applying ordinary negligence principles, we conclude Appellants' claims were appropriately dismissed. As we have stated, an employer may be held negligent for the failure to exercise reasonable care in determining an employee's propensity for violence in an employment situation where the violence would harm a third person. *Dempsey v. Walso Bureau, Inc.* 431 Pa. 562, 246 A.2d 418 (1968). In these situations the victim must establish that the employer breached a duty to protect others against a risk of harm. Where the victim does not enjoy a special relationship with the employer and is, in fact, a stranger, the duty owed may be inferred from the general duty imposed on all persons not to place others at risk of harm through their action. *Zanine v. Gallagher*, 345 Pa.Super. 119, 497 A.2d 1332 (1985). The scope of this duty is limited to those

risks that are reasonably foreseeable by the actor in the circumstances of the case. *Id.*

¶ 21 In *J.E.J. v. Tri–County Big Brothers/Big Sisters*, 692 A.2d 582 (Pa.Super.1997), a youth organization was held to owe no duty to a child who was not associated with the youth organization, but was sexually abused by a former volunteer. This ruling was made although the volunteer had previously assaulted another child and the organization failed to report this fact. Because neither the child nor his family had any relationship with the organization, only a general duty not to place others at risk of a foreseeable harm was found to apply. The court determined the general duty of care to warn or to protect did not extend to the child or his family given the tenuous connection between the parties.

¶ 22 In *Coath v. Jones*, 277 Pa.Super. 479, 419 A.2d 1249 (1980) a former employee raped the plaintiff in her home after gaining entry by representing he was on the employer's business. This Court stated:

> [I]f the [employer] were negligent in selecting [the employee] as an employee and if it were *foreseeable* by the [employer] that [the employee] even though he was discharged as an employee, could attack a customer because he had, on a previous occasion, been admitted to her home on the employer's business, then there would exist a special relationship between [the employer] and the customer and a duty on the employer to give reasonable warning to the customer.

419 A.2d at 1251 (emphasis added).

¶ 23 We conclude World Truck did not have a special relationship with either McMahon or Brezenski and that the duty owed to them was a general duty not to place them in risk of harm, limited to those risks which were reasonably foreseeable. The shooting death of McMahon and the injuries to Brezenski caused by Crew's intentional criminal conduct could not have been foreseen by World Truck. Crew traveled miles outside his posted route, and as a result of an unforeseen and tragic happenstance, he encountered these two individuals. While knowledge of Crew's possession of a weapon against company policy may be imputed to World Truck, his attack could not be foreseen. Crew's criminal act toward these strangers did not relate to employment or his fitness as a truck driver. Appellants allege that World Truck did not adequately screen Crew and learn of his past mental problems, however, it is doubtful that a more thorough screening would have revealed such intimate information as past hospitalizations or diagnoses. Even accepting, as we must for purposes of summary judgment review, the fact that Crew was discharged from prior employment for incompetence and mental instability, the crimes involved in this case are too remote from Crew's employment as a truck driver and unforeseeable to hold World Truck responsible.

¶ 24 Similar cases from other jurisdictions have led to the same result. In *Connes v. Molalla Transport System Inc.*, 831 P.2d 1316 (Colo.1992), the entry of summary judgment was upheld in favor of an employer against whom a claim was made for the negligent hiring of a long-haul truck driver. The plaintiff was working as a night clerk at a hotel in Colorado. The employee left the highway on which he was traveling and observed the plaintiff alone in the lobby. He went inside and sexually assaulted the plaintiff at knifepoint. The plaintiff brought an action against the employer claiming that it knew or should have known that this employee would come into contact with members of the public and the employer had a duty to hire and retain employees who would not endanger them. The plaintiff claimed the employer breached this duty by failing to adequately investigate the employee's criminal background which would have revealed his conviction of three prior felonies and the issuance of citations for lewd conduct, simple assault, fourth-degree assault and domestic violence.

¶ 25 The court remarked that in situations where the employment calls for frequent contact with members of the public, or close contact with a particular person as a result of a special relationship between such persons and the employer, an employer's duty of reasonable care is not satisfied by a mere review of personal data disclosed on a job application form or during a personal interview. The court found the employer had a duty to use reasonable care in hiring a safe driver who would not create a danger to the public in carrying out the duties of the job. However, the duties of this driver were restricted to hauling freight on interstate highways, which involved only incidental contact with third persons who had no special relationship with the employer. The court held the risk of harm to the plaintiff was unforeseeable, and the employer had no legal duty to conduct an independent investigation into the driver's non-vehicular criminal background in order to protect a member of the general public, such as the plaintiff.

¶ 26 In *Guidry v. National Freight*, 944 S.W.2d 807 (Tex.App.1997), a long-haul truck driver applied for employment with the defendant employer. He stated in his employment application that he had no criminal record. In fact, the employee had a history of sexual misconduct in his military records, criminal records and previous employment records. The employer never confirmed the statements made in the application, never conducted an independent investigation into his nonvehicular criminal record, and never contacted his previous employer. The employer did, however, check the employee's driving record, as required by law. The employee was hired, and while driving through the city of Austin, he stopped and parked his truck at a building to urinate and stretch his legs. The employee left the truck in the parking lot and wandered through an adjacent neighborhood before coming to a condominium complex parking lot. There he encountered a woman and dragged her into an adjoining apartment complex and raped her. The victim brought an action against the employer claiming that it was liable for the negligent hiring, supervision and retention of the employee.

¶ 27 The court ruled that before liability will be imposed there must be sufficient evidence to indicate the defendant knew or should have known that a foreseeable harm would eventually befall the victim. It found the employee should never have come into contact with the plaintiff in the exercise of his duties as a truck driver, thus, the duty owed to her must flow from a duty owed to the general public. The court found negligence could not be established because the harm was not foreseeable. The court reasoned that this situation differs from that where an employer places the employee into a special relationship of trust with a vulnerable group, such as a scoutmaster with young boys, a drug counselor with the family of an addict, or a nurse with the elderly. *Id.* at 810. It also found that this case did not concern an employer who hired an employee to go to a customer's home to sell its product. In these situations an employer would be held to a heightened obligation. The Texas court found the employer had "a duty to take steps to prevent injury to the driving public by determining the competency of a job applicant to drive one of its trucks." *Id.* at 809. It found the purpose of this duty "is to promote highway safety and prevent motor vehicle accidents, not to prevent general criminal activity." *Id.* The court refused to impose a duty on the employer of a long-haul driver to conduct a criminal background check on all new applicants, or periodic criminal checks on all current employees. It found the employer's duty was simply to hire competent drivers and that it would not "require an employer to insure the safety of those who come into contact with an employee by reasons other than his employment." *Id.* at 811.

¶ 28 We find these decisions persuasive in view of the facts presently before us. World Truck had an obligation to hire drivers who operate their vehicles in a safe manner. Crew did not injure anyone

as a result of his unsafe driving, or any incident related to his driving. His criminal acts in this case were incidents unrelated to truck driving. World Truck should not be responsible for Crew's unforeseeable criminal attack on individuals who had no relationship with World Truck. Certainly the events in this case are tragic. One individual lost his life and another was seriously injured as a result of Crew's irrational criminal behavior. However, principles of ordinary negligence law cannot allow for recovery from the employer because of these unforeseeable criminal acts committed by its employee. Accordingly, we conclude the trial court properly entered summary judgment on Appellants' claims for the negligent hiring and retention of Crew.

¶ 29 We likewise find no error in the trial court's grant of summary judgment on the remaining claims of negligent and intentional infliction of emotional distress. As noted by the trial court, absent a finding of negligence, the negligent infliction of emotional distress claim cannot survive. *J.E.J. v. Tri-County Big Brothers/Sisters*, 692 A.2d at 586 fn. 4. Regarding the intentional infliction of emotional distress claim, the trial court notes that there was nothing offered by Appellants to suggest that World Truck acted in an intentional or reckless manner as to them. To prevail on a claim of intentional infliction of emotional distress, Appellants must prove that World Truck, by extreme and outrageous conduct, intentionally or recklessly caused them severe emotional distress. RESTATEMENT (SECOND) OF TORTS, § 46 (1965); *Motheral v. Burkhart*, 400 Pa.Super. 408, 583 A.2d 1180 (1990). We agree with the trial court that there are no facts to support a conclusion that World Truck engaged in any "extreme or outrageous" conduct as a matter of law. Thus, we affirm the trial court's ruling.

¶ 30 Judgment affirmed.