Leslie L. **BRISBINE** and, Clarence J. Brisbine, Individually, and Leslie L. Brisbine, as Administratrix of the Estate of Shawn Clarence Brisbine, Deceased Appellant

v.

**OUTSIDE IN SCHOOL OF EXPERIENTIAL EDUCATION, INC.,** Appellee

Superior Court of Pennsylvania.

Argued March 20, 2002.
Filed May 7, 2002.

Gary A. Falatovich, Greensburg, for appellants.

Stephen J. Poljak, Pittsburgh, for appellee.

Before: JOHNSON, BENDER, and MONTEMURO *, JJ.

JOHNSON, J.

¶ 1 Leslie and Clarence Brisbine appeal the trial court's grant of Outside In School of Experiential Education, Inc.'s (OISEE) Motion for Summary Judgment. The Brisbines contend that the trial court erred in concluding that OISEE did not have a duty to the Brisbines or their son, Shawn, who was killed while a passenger in a car driven by Robert Nicholas Baker, an OISEE student. Furthermore, the Brisbines contend that the trial court erred in concluding that OISEE's conduct was not a substantial factor in the death of Shawn Brisbine. For the foregoing reasons, we affirm the trial court's grant of OISEE's summary judgment motion.

¶ 2 The Brisbines' son, Shawn, thirteen, died when a car driven by Baker collided with a tree at approximately 4:00 a.m. on Sunday, September 3, 1995. At the time of the accident, Baker should have been attending OISEE's Phase II weekend program as ordered by the Westmoreland County Juvenile Court.

¶ 3 OISEE contracted with Westmoreland County to provide court ordered educational and rehabilitative services to juveniles in part to avoid out of home placement for juvenile delinquents. The weekend program required parents to deliver the children to a drop-off location at the Greensburg Armory at 6:00 p.m. on Friday. The children would then be returned to their parents' care the following Sunday at noon.

¶ 4 OISEE was aware that Baker had an extensive history with the Westmoreland County Juvenile System and with law enforcement authorities in Clearfield County. Baker had been adjudicated delinquent and dependent a number of times as recently as August 15, 1995, a few weeks before the accident. Baker had a history of taking his mother's car without either her permission or a license. He had set fire to his mother's back porch, thrown pennies at another's car, run away from two shelters in which he had been placed by the court, and previously failed to complete an OISEE weekend program. Additionally, his mother admittedly enabled some of his behaviors, failed to report his

* Retired Justice assigned to the Superior Court.

misconduct and could not control him. As of August 1995, Baker was placed at the Y.M.C.A. Youth Shelter awaiting an opening in a residential drug and alcohol program. While at the Y.M.C.A. shelter, Baker successfully attended the OISEE program for the two weekends prior to the weekend of the accident. After a hearing on August 15, 1995, the Westmoreland County Juvenile Court Master recommended that Baker be returned to his mother's custody on August 27th. Furthermore, the Master recommended that Baker attend OISEE's weekend program. The Master's recommendations were approved by order of the court.

¶ 5 Baker should have been attending the OISEE program from Friday afternoon at 6:00 p.m. until noon the following Sunday. Baker's mother had made arrangements for her brother to transport Baker to the OISEE program while she attended a concert. On Saturday morning, Baker's mother discovered that Baker had not gone to the program, but she did not report his absence. Instead she sent Baker to his grandmother's where he stole his mother's car. Later that evening, Baker's mother took her keys away from her son. Unknown to his mother, Baker had made a second set of keys to the car. In the early hours of Sunday morning, Baker used the duplicate keys to drive himself and his neighbor, Shawn Brisbine. Both teenagers were killed in the subsequent accident.

¶ 6 The Brisbines filed a wrongful death and survivor benefits action against Baker's mother and later against OISEE. The trial court denied OISEE's first Motion for Summary Judgment in June 2000. In February 2001, the court allowed OISEE to re-brief and reargue its Motion for Summary Judgment and then granted the motion based on a lack of a duty due to Shawn by OISEE and because OISEE was not a substantial factor in Shawn's death. The Brisbines now appeal the trial court's grant of summary judgment.

¶ 7 The Brisbines present the following questions for our review:

I. Whether [OISEE] had a duty of care to [the Brisbines' decedent] under the circumstances of this case?

II. If a duty existed from [OISEE] to the [Brisbines' decedent], would any negligent conduct of OISEE be a substantial factor in bringing about harm to the [the Brisbines' decedent] as a matter of law?

Brief for Appellant at 4.

¶ 8 When reviewing grants of summary judgment, we must "examine the record in a light most favorable to the nonmoving party, accepting as true all well-pleaded facts and giving that party benefit of all reasonable inferences which can be drawn from those facts." *Winwood v. Bregman,* 788 A.2d 983, 984 (Pa.Super.2001). We will reverse a grant of summary judgment only if the trial court committed an error of law or abused its discretion. *See id.* In their first question, the Brisbines assert that the trial court erred in failing to find a duty owed by OISEE to their son. Brief for Appellant at 25. The Brisbines assert that the trial court erred in not considering, and therefore in not finding, a "special relationship" between OISEE and Baker. Brief for Appellant at 25. The Brisbines note that the agreement between OISEE and Westmoreland County states that OISEE "shall retain responsibility for physical custody of the child during the period of placement." Brief for Appellant at 28. The Brisbines contend that, as a result of the asserted "special relationship," OISEE had a duty under the Restatement (Second) of Torts Sections 315(a) and 319 to ensure that Baker attended the program and to prevent him from harming others during the placement period. Brief for Appellant at 25–31.

¶ 9 The Brisbines analogize OISEE's asserted duties in conjunction with the Juvenile Act to the duty the Pennsylvania Supreme Court has imposed on mental health institutions to prevent patients from harming third parties. Brief for Appellant at 29–30. The Brisbines assert that OISEE should have been aware of an increased risk of problems considering Baker's history of arson, car theft and joyriding. Brief for Appellant at 33–34.

¶ 10 The trial court concluded that the contract between OISEE and Westmoreland County did not create a duty to the Brisbine family as beneficiaries of the contract, and the Brisbines do not contest the court's conclusion. Trial Court Opinion, 7/3/01, at 2–4; Brief for Appellant at 21. Although the trial court did not specifically address the Brisbines' claims of duty under Sections 315 and 319, the trial court did conclude that OISEE did not have a duty under the common law to the Brisbines. Trial Court Opinion, 7/3/01, at 7–9. We agree.

¶ 11 To establish a common law cause of action in negligence, "the plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff and the plaintiff suffered an actual loss or damage." *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 40 (Pa.Super.2000). Generally, there is no duty to control the acts of a third party unless the "defendant stands in some special relationship with either the person whose conduct needs to be controlled or in a relationship with the intended victim of the conduct, which gives the intended victim a right to protection." *Id.* (citing *Emerich v. Philadelphia Ctr. for Human Dev., Inc.*, 554 Pa. 209, 720 A.2d 1032 (1998)). *See also* RESTATEMENT (SECOND) OF TORTS § 315. A special relationship is limited to the relationships described in Sections 316–319 of the Restatement (Second) of Torts. *See Brezenski*, 755 A.2d at 40–41. The enumerated relationships specified in the Restatement are a parent's duty to control a child (Section 316); a master's duty to control a servant (Section 317); a possessor of land's duty to control a licensee (Section 318); and the duty of those in charge of individuals with dangerous propensities to control those individuals (Section 319). *See* RESTATEMENT (SECOND) OF TORTS §§ 316–319. Section 319 is the only section arguably applicable to the present case:

**SECTION 319. DUTY OF THOSE IN CHARGE OF PERSON HAVING DANGEROUS PROPENSITIES**

One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

RESTATEMENT (SECOND) OF TORTS § 319. The comment to Section 319 states two situations to which the section applies. The first situation involves an actor who "has charge of one or more of a class of persons to whom the tendency to act injuriously is normal." RESTATEMENT (SECOND) OF TORTS § 319, cmt. a. The second situation occurs when an actor has charge of a person who has a "peculiar tendency" to act injuriously "of which the actor from personal experience or otherwise knows or should know." *Id.*

¶ 12 The Brisbines rely on the Pennsylvania Supreme Court's decision in *Goryeb* to support their argument under Section 319. Brief for Appellants at 31–30 (citing *Goryeb v. Com. Dept. of Public Welfare*, 525 Pa. 70, 575 A.2d 545 (1990)). In *Goryeb*, the Supreme Court held that a mental health institution was liable to a

third party who was killed by a former patient improperly released from treatment. *See Goryeb,* 525 Pa. 70, 575 A.2d 545. The court's decision to impose liability was supported by sections of the Mental Health Procedures Act ("MHPA"), 50 P.S. §§ 7101–7503, specifically addressing when individuals employed by mental health facilities may be liable for the consequences of treatment or discharge decisions. *See id.* at 548–549. Furthermore, the court in *Goryeb* imposed a duty on the institution to those the patient shot based on the language of the liability section of the MHPA. *Id.* at 549. The relevant section stated that a person committing willful misconduct or gross negligence in treating or discharging decisions shall be "liable for such decision or *for any of its consequences." See id.* at 549 quoting 50 P.S. § 7114(a) (emphasis in original). The Brisbines suggest that the Juvenile Act invoked by the agreement between OISEE and Westmoreland County is similar to the MHPA. Brief for Appellant at 30. However, the Brisbines fail to direct our attention to any similar section of the Juvenile Act addressing liability of service providers.

¶ 13 Furthermore, we can easily distinguish the facts of *Goryeb* and the instant case. In *Goryeb,* a mental health facility determined that a patient posed a "clear and present danger to himself and others" and was "severely mentally disabled and in need of treatment." *See id.* at 546. The facility then improperly released the patient. *See id.* at 546. One week later, the patient shot three persons in addition to himself, one fatally. *Id.* at 546–547. In this case, OISEE did not have physical custody of Baker during the weekend. Additionally, the fact that the Westmoreland County Court considered Baker able to live at home with his mother during the week does not suggest that Baker was a highly dangerous person. Therefore, we conclude that OISEE did not have a "special relationship" with Baker as defined by Sections 315 and 319 of the Restatement (Second) of Torts.

¶ 14 Alternatively, if there was no special relationship between OISEE and Baker, the Brisbines claim that OISEE had a duty to protect the public from potential harm resulting from OISEE's actions. Brief for Appellant at 31–38. The Brisbines claim that the accident was a reasonably foreseeable consequence of OISEE's failure to report Baker's absence from the program. Brief for Appellant at 35. The Brisbines claim that OISEE knew that Baker's mother had difficulty controlling Baker and that Baker had a history of taking his mother's car for joyrides. Brief for Appellant at 34–35. Accordingly, the Brisbines conclude that it was reasonably foreseeable that if he took the car he might get into an accident causing injury. Brief for Appellant at 32, 35. The Brisbines argue that a jury could conclude that a reasonable person in OISEE's situation would have contacted authorities, which they claim was required by the Juvenile Act and the contract with Westmoreland County. Brief for Appellant at 23, 36.

¶ 15 The Brisbines argue that *Goryeb* and this Court's decision in *Evanuik v. Univ. of Pittsburgh W. Psychiatric Inst. and Clinic* ("WPIC"), 234 Pa.Super. 287, 338 A.2d 636 (1975) support the imposition of a duty on OISEE. Brief for Appellant at 37. As previously discussed, *Goryeb* is easily distinguished from the present case. Additionally, we note that this Court in *Evanuik* did not discuss WPIC's duty and in fact a jury found WPIC not liable for injuries resulting from an escaped patient. *See Evanuik,* 234 Pa.Super. 287, 338 A.2d 636. Clearly, *Evanuik* does not provide authority for imposing a duty in this case.

¶ 16 The Brisbines further state that the trial court erred in relying on the Pennsylvania Supreme Court's decision in *Althaus ex rel. Althaus v. Cohen,* 562 Pa. 547, 756

A.2d 1166 (2000). Brief for Appellant at 36–37. The Brisbines conclude that *Althaus* is not relevant outside the context of sexual abuse cases. Brief for Appellant at 36–37. We strongly disagree.

¶ 17 Whether a duty exists is a question of law for the trial court to decide. *See Herczeg v. Hampton Township Mun. Auth.*, 766 A.2d 866, 871 (Pa.Super.2001). In *Althaus,* the Supreme Court specified the factors a trial court should consider when determining whether to impose a duty in *any* negligence action as follows:

(1) the relationship between the parties;

(2) the social utility of the actor's conduct;

(3) the nature of the risk imposed and foreseeability of the harm incurred;

(4) the consequences of imposing a duty upon the actor; and

(5) the overall public interest in the proposed solution.

*Althaus,* 756 A.2d at 1169.

¶ 18 The trial court concluded after considering the *Althaus* factors, that it was "inescapable" that OISEE did not have a duty of care owed to the Brisbines. Trial Court Opinion, 7/3/01, at 8. The court based its conclusion on the foreseeability factor. The court found that the accident was not foreseeable because "[t]he set of circumstances that came about to cause the accident could not have been reasonably foreseen by any entity or individual other than [Baker] or Shawn Brisbine." Trial Court Opinion, 7/3/01, at 8.

¶ 19 We agree with the trial court's conclusion. Additionally, we note that other *Althaus* factors also strongly point in favor of not imposing a duty on OISEE. First, OISEE had no relationship with the Brisbines. Secondly, OISEE's weekend program has substantial social utility, as the courts and the legislature clearly favor the creation of such programs to rehabilitate delinquents back into the mainstream of society. Thirdly, as the trial court noted, this accident was hardly foreseeable as the court not two weeks prior to the accident considered Baker to pose a low enough risk to society to return him from the Y.M.C.A. shelter to his mother's custody for all but two days a week. Therefore, we find no error in the trial court's conclusion. Even if the Brisbines could show that the agreement with Westmoreland County required OISEE to call authorities and that such a call could have resulted in Baker not having access to the car on the fateful night, we would still conclude that OISEE did not owe a duty to Shawn as a result of their failure to call authorities.

¶ 20 As we conclude that OISEE owed no duty to Shawn Brisbine or his parents, we need not address the Brisbines second claim of error concerning whether OISEE's actions were a substantial factor in Shawn's death. Therefore, for all the foregoing reasons, we affirm the trial court's grant of summary judgment to OISEE.

¶ 21 Order AFFIRMED.