Tracey McCANDLESS, Administrator of the Estate of Daniel John Diamond, Jr. and Daniel Diamond, Sr., Administrator of the Estate of Daniel John Diamond, Jr. and Tracey McCandless and Daniel Diamond, Sr. in their Own Right

v.

Wayne EDWARDS and Gregory Edwards and Girard Medical Center and North Philadelphia Health System.

Appeal of Tracey McCandless, Administrator of the Estate of Daniel John Diamond, Jr.

Superior Court of Pennsylvania.

Argued July 25, 2006.

Filed Sept. 7, 2006.

Reconsideration Denied Oct. 30, 2006.

Lawrence Solomon, Philadelphia, for appellant.

Kimberly A. Boyer-Cohen, Philadelphia, for North Philadelphia Health, appellee.

Wayne Edwards, appellee, Pro Se.

Gregory Edwards, appellee, Pro Se.

BEFORE: MUSMANNO, KLEIN and TAMILIA, JJ.

OPINION BY TAMILIA, J.

¶ 1 Tracy McCandless and Daniel Diamond Sr., appeal both as individuals and in their capacity as co-executors of the estate of Daniel Diamond, Jr., from the January 26, 2006, judgment entered following the trial court's denial of post-trial motions seeking a new trial or judgment notwithstanding the verdict.

¶ 2 The underlying facts in this case are not in dispute. Appellee Girard Medical Center, a subsidiary of the North Philadelphia Health System ("NPHS"), prescribed Wayne Edwards methadone as part of a pain management program. Wayne's nephew, Gregory Edwards, stole the methadone from Wayne's residence and sold it to Daniel Diamond, Jr. ("decedent"). On April 30, 2001, decedent ingested a pharmaceutical cocktail that included the methadone and lapsed into aspiration pneumonia, resulting in his death.

¶ 3 On June 12, 2002, appellants filed a complaint alleging, *inter alia,* Girard Medical and NPHS were negligent in oversupplying Wayne Edwards with methadone in violation of applicable federal regulations. Record, No. 8. After months of procedural maneuvering by the parties, the trial court entered a default judgment against Gregory Edwards for failing to answer the complaint on June 6, 2003. Record, No. 27. Subsequently, the trial court also entered default judgment against Wayne Edwards for failing to answer on June 23, 2003. Record, No. 30.

¶ 4 A jury trial commenced on October 18, 2004 and at the close of appellees' case, both parties moved for a directed verdict. N.T., 10/20/04, at 52, 55. The trial court granted Girard and NPHS's motion by Order of October 22, 2004. Record, No. 64. Shortly thereafter appellants filed their post-trial motions. Record, No. 65. The case then proceeded to the jury for an assessment of damages against Wayne and Gregory Edwards. The jury determined Wayne was sixty percent responsible for decedent's death and Gregory was forty percent responsible. Thereafter, appellants perfected a timely appeal to this Court.

¶ 5 Appellants raise the following issues for our review:

I. Whether the Plaintiffs were entitled to a New Trial because the trial judge improperly directed a verdict on behalf of North Philadelphia Health Systems and Girard Medical Center based on his conclusion that they owed no duty to the decedent, Daniel Diamond, Jr.

II. Whether the lower court improperly allowed in evidence from the defendants' expert that was based upon double hearsay contained in a police report.

III. Whether the lower court should have granted the Plaintiff a judgment notwithstanding the verdict.

Appellants' brief at 4.

¶ 6 As to the first two issues raised, our standard of review is as follows:

When assessing the trial court's denial of a motion for new trial, we apply a deferential standard of review. The decision whether to grant or deny a new trial is one that lies within the discretion of the trial court. We will not overturn such a decision unless the trial court grossly abused its discretion or committed an error of law that controlled the outcome of the case.

*B & L Asphalt Indus. v. Fusco*, 753 A.2d 264, 267 (Pa.Super.2000) (internal citations and quotations marks omitted).

■ ¶ 7 In directing a verdict in favor of Girard Medical and NPHS, the trial court came to a number of conclusions. First, the court relied on the framework outlined in *F.D.P. ex. rel. S.M.P. v. Ferrara*, 804 A.2d 1221 (Pa.Super.2002), in concluding Girard and NPHS did not owe a duty of care to the decedent. Trial Court Opinion, Jelin J., 1/13/06, at 3–5. Second, the court found Girard Medical's internal regulations did not, in of themselves, create a duty of care in favor of the decedent as a matter of law. *Id.* at 4. Furthermore, the trial court concluded federal regulations governing clinical distribution of controlled substances did not impose a duty upon Girard Medical and NPSH in favor of the decedent as a matter of law but, rather, created a duty flowing from Girard Medical and NPHS to Wayne Edwards as patient. *Id.* at 5.

¶ 8 In reviewing a trial court's decision to direct a verdict in favor of a defendant, we must view the evidence in the light most favorable to the plaintiff in order to determine whether plaintiff failed to prove his case as a matter of law. *Riley v. Warren Mfg.*, 455 Pa.Super. 384, 688 A.2d 221, 224 (1997) (citation omitted). If a jury reasonably could have concluded, on the basis of the evidence and all reasonable inferences therefrom, that the defendant was liable, then the directed verdict must be reversed. Our review over questions of law is, as always, plenary. *Id.*

■ ¶ 9 To establish a cause of action sounding in negligence, a party must demonstrate they were owed a duty of care by the defendant, the defendant breached this duty, and this breach resulted in injury and actual loss. *Brisbine v. Outside In Sch. of Experiential Educ., Inc.*, 799 A.2d 89, 93 (Pa.Super.2002), *citing Brezenski v. World Truck Transfer*, 755 A.2d 36, 40 (Pa.Super.2000).

■ ¶ 10 At trial, appellants' argument was premised on the theory that Girard Medical and NPHS owed a general duty of care to the public at large.[1] In addressing this theory, the trial court pointed to the following rule of law used to determine whether this alleged duty was legally cognizable:

The following factors, which are derived from the above principles, are to be applied in determining the existence of a duty: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk

1. As a general matter, there is no duty to control the acts of a third party unless a defendant stands in a "special relationship" with either the third party whose conduct needs to be controlled or the intended victim of such conduct. *Brisbine v. Outside In Sch. of Experiential Educ., Inc.*, 799 A.2d 89, 93 (Pa.Super.2002), *citing Brezenski v. World Truck Transfer*, 755 A.2d 36, 40 (Pa.Super.2000), *accord* **Restatement of Torts (Second)**, Title A, Duty to Control Conduct of Third Persons § 315, General Principle. In Pennsylvania, "special relationships" are only those described in sections 316–319 in the Restatement of Torts (Second). *Id.* These special relationships include a parent's duty to control a child (§ 316), a master's duty to control a servant (§ 317), a landowner's duty to control a licensee (§ 318), and the duty of those in charge of individuals with dangerous propensities to control these individuals (§ 319). *Id.*

imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; (5) the overall public interest in the proposed solution.

Trial Court Opinion, Jelin, J., 1/13/06, at 3, *citing Ferrara, supra* at 1231 (Pa.Super.2002) (internal citations and quotation marks omitted).

■ ¶ 11 In determining whether to create a duty of care, the most important factor to consider is social policy. *Ferrara, supra* at 1231. It is a question of law as to whether a duty of care exists. *Brisbine, supra* at 95.

¶ 12 In applying the *Ferrara* factors, the trial court pointed out that no relationship existed between Girard Medical, NPHS and the decedent. It noted that Girard Medical's services provided great social utility by rehabilitating heroin addicts and further opined that it was highly unforeseeable a person would steal methadone from a patient and then sell it to a third party, who would turn around and lethally overdose. The court also emphasized that imposing a duty in this instance would effectively prevent methadone clinics from disbursing take-home medication to patients. Finally, the trial court pointed out the public interest would not be served by preventing incapacitated heroin addicts from taking medication at home. Trial Court Opinion at 4.

¶ 13 Appellants attack this analysis by arguing *Ferrara* is factually inapposite to the matter *sub judice* and, hence, other cases should be deemed to be factually controlling.[2] Appellants' argument is flawed because the trial court did not draw a correlation between the facts in *Ferrara* and the facts at hand but, rather, relied on

the legal principles set forth in *Ferrara*. After careful review of the trial court's analysis, we conclude it did not err as a matter of law in determining Girard Medical and NPHS did not owe a duty of care to the decedent.

¶ 14 Appellants also aver Girard Medical's internal regulations created a duty of care running to the decedent. In doing so, appellants point out that Girard Medical and NPHS itself recognized it had a duty to the public at large.

■ ¶ 15 Appellants' argument in this regard misses the mark. Although Girard Medical and NPHS took steps to regulate the dissemination of methadone in accordance with federal guidelines and general principles of social responsibility, this in no way means a duty of care was created *de facto* as a matter of tort law in the Commonwealth. *See Ferrara, supra* at 1231.

■ ¶ 16 Appellants' final argument with respect to the first issue raised is that various provisions in federal law create a duty of care in this instance as a matter of law. In attempting to bolster this argument, appellants point to a number of federal provisions. Initially, their reliance on 21 U.S.C. 823, **Registration requirements**, is wholly misplaced because its only purpose is to provide guidelines for the Attorney General to consider when deciding whether to register a party as a manufacturer or distributor of a controlled substance. As such, it has no bearing on the issue of whether a duty of care exists. Appellants next point to 42 U.S.C. 257, which was repealed in October 2000 and, therefore, has no import whatsoever. Appellants also point to "66 F.R. 4090," which

---

**2.** Appellants support their argument by forwarding two lists of cases in their brief followed by a factual summary and commentary on all cases included in these lists. Appel-

lants' brief at 26–36. Appellants' argument reads like a cut-and-paste law review article and does little to bolster their position.

does not exist.[3] Finally, appellants point to sections 8.4, 8.2, and 8.12(j)(4)(i) of "that Act" (a phrase which seemingly refers to the non-existent 66 F.R. 4090) for the proposition that "[Programs or Practitioners engaged in opioid treatment of individuals] must maintain current procedures adequate to identify the theft or diversion of take-home medication." Appellants' brief at 26. Appellants, however, fail to point to any authority providing that this requirement can be enforced through private causes of action sounding in negligence in state court.

¶ 17 Turning to the second issue raised, appellants argue the trial court erred in admitting testimony from an expert witness who noted decedent was a user of the narcotic oxycotin. Appellants allege the expert witness extrapolated this evidence from a statement taken from an eyewitness to decedent's death and contained in a police report and, as such, the expert witness' testimony in this regard constitutes inadmissible double hearsay.

¶ 18 Appellants' argument is easily dismissed. As appellees point out, the trial court entered a directed verdict in their favor after finding they did not owe decedent a duty of care as a matter of law. Consequently, the double hearsay issue is moot as a consequence of our determination that the trial court's finding was appropriate.

¶ 19 Turning to the final issue raised, appellants aver: "The testimony was so overwhelming in favor of the claim presented, that a judgment notwithstanding the verdict should be entered." This averment constitutes the entirety of the argument with respect to this issue. Appellants' brief at 39.

¶ 20 Appellants' failure to support this bald averment by pointing to any relevant facts or pointing to any legal support constitutes waiver of the issue. *Commonwealth v. Luktisch*, 451 Pa.Super. 500, 680 A.2d 877, 879 (1996), *citing* Pa.R.A.P. 2119, **Argument** (other citations omitted).

¶ 21 Judgment affirmed.

---

**3.** The Code of Federal Regulations only contains fifty titles.