**J.P. v. Richards**

C.P. of Philadelphia County, March Term 2013 No. 4402

MASSIAH-JACKSON, *J.*, Jan. 29, 2015—

## I. FACTUAL BACKGROUND and PROCEDURAL HISTORY

In 1982, the national vice-president of Big Brothers Big Sisters of America published a Report titled "child sexual abuse". Attorney Donald L. Wolff relied on a host of experts in the fields of mental health, psychology, medicine, social work and more to assist the national organization, the affiliate agencies, the executive directors, professional staffs, parents, boards, volunteers and the community, in the detection, selection, supervision and investigative procedures of alleged abusers. Mr. Wolff noted that Big Brothers Big Sisters of Americas, that is, "we who are in the field of providing service ... to young children", had actual knowledge that such service attracts child sexual abusers. Wolff Report, pages 1-2.

Vice President Wolff stated in his Report at pages 7-8:

"Generally it is agreed that child molestation type offenses do not involve physical force for the commission of the offense. In fact the reverse is more often true. The offender usually entices through indoctrination the child into the sexual behavior through either persuasion or entrapment in which the child is caused to feel indebted or obligated. Since we deal with

boys and girls who may have no adequate role model or parent figure in their lives, it is very characteristic to shower the child with new found approval .... affection and attention with the new relationship. Money, gifts and new, exciting adventures for the child with this new friend all could be ways to pressure the child into approval for otherwise reluctant behavior. Clearly our clients are a 'high risk' for the potential abuser. The pedophilic applicant will generally try to encourage overnight visits, weekend stays at his home, or trips which involve travel very early in the relationship."

In 1991, when J.P. was 8 years old, his mother enrolled him in the Big Brothers program. James W. Richards was selected by Big Brothers to be J.P.'s Mentor. The record reveals that Mr. Richards did in fact "shower" J.P. with attention, gifts, adventures and trips. J.P. spent nights at Mr. Richards home. Before long J.P. was forced to engage in sex acts with James W. Richards. The sexual assaults continued from 1991 through at least 1996. Complaint, Paragraphs 23-49.

In 2011, when J.P. recalled and then disclosed the childhood sexual abuse, an investigation ensued. In March, 2013, J.P. initiated this litigation alleging negligence, negligent hiring, supervision and retention, and battery against, *inter alia*, defendant-Richards, Big Brothers of Burlington, Camden and Gloucester Counties, and, Big Brothers Big Sisters of America. M.P., who is J.P.'s wife,

has filed a loss of consortium claim against All defendants.

Defendants have filed motions for summary judgment, which plaintiffs oppose. On January 12, 2015, oral argument was heard by the court. After careful consideration of all memoranda and Exhibits submitted by the parties, and after hearing the comprehensive presentations on January 12th, this court concludes that all of the motions for summary judgment are denied.

## II. LEGAL DISCUSSION

Rule 1035.2 of the Pennsylvania Rules of Civil Procedure states:

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

Initially, we consider defendant-Richards motion to dismiss asserting that this court lacks *in personam* jurisdiction because the sex acts with the child J.P., did not occur in Pennsylvania. (Control No. 14100596). 42 Pa. C.S.A. §5322.

The defendant argues that with claims of an intentional tort such as battery (Count IV of plaintiffs' complaint) the tort occurs at the time of the physical sexual assault. Defendant-Richards suggests that "tourist activities" such as attendance at Phillies baseball games, visits to the Philadelphia Auto Show, meals in Philadelphia's Chinatown, and walks over the Benjamin Franklin Bridge from New Jersey to Philadelphia cannot be considered Battery. *See generally*, Hearing Transcript, January 12, 2015. Under the circumstances presented in the record here, this court cannot agree.

Plaintiffs' expert, Sharon W. Doty, describes the process of "seducing a child" as the "grooming" process. Her report, on pages 3-4, identifies physical, psychological and community grooming. Donald Wolffs 1982 description of a predator's "indoctrination" of the child is strikingly similar.

Section 5322 of Pennsylvania's Long Arm Statute provides Pennsylvania Courts jurisdiction when that individual:

"(iii) Causes harm or tortious injury by an act or

omission in Pennsylvania,"

In this instance, the series of visits to Pennsylvania were undertaken to bring about the physical sexual acts. Those activities in Pennsylvania were purposeful and directed and met the minimum contacts test of due process. *Kubik v. Letteri*, 614 A.2d 1110 (Pa. 1992); *Mendel v. Williams*, 53 A.3d 810 (Pa. Superior Ct. 2012); *Schiavone v. Aveta*, 41 A.3d 861 (Pa. Superior Ct. 2012). The harm, the tortious injury, and the cause of action of battery, did take place in Pennsylvania because *all* of the activities were part of the defendant-Richards tortious behavior. Summary judgment cannot be granted as a matter of law.

Next, Big Brothers Big Sisters of Burlington, Camden and Gloucester Counties ("New Jersey") has filed its motion to strike certain claims from plaintiffs' complaint (Control No. 14101648):

a. Paragraph 35-asserting that there is no evidence to support that Mr. Richards brought J.P. to the Philadelphia International Auto Show for the purpose of sexually molesting J.P.; and,

b. Paragraph 71-asserting that it is unable to prepare a defense because it does not know what conduct consists of "other things"; and,

c. Paragraph 71 (n) — asserting that plaintiffs have been unable to supports claims of negligence "from facts ... exclusively in the possession of the defendants."

There is no factual or legal basis for summary judgment presented by this defendant-Big Brothers of New Jersey.

Paragraph 35 of plaintiffs' complaint when read in context as a complete sentence states:

"35. In January of 1993, Mr. Richards brought J.P. to the Philadelphia International Auto Show for the purposes of furthering his relationship with J.P. and sexually molesting him."

The record in this litigation supports the averment that the "indoctrination" and "grooming" behaviors of the Big Brothers of New Jersey volunteer (defendant-Richards) included the trips to Philadelphia for purposes of furthering the relationship and pursuing sexual activity with the child. Whether or not sex acts occurred at the Auto Show, defendant-Richards' behaviors were included in the harm and tortious conduct suffered by plaintiff-J.P.

The challenges to Paragraph 71 are rejected where, as here, the depositions, the documents, internal and confidential organization reports, were ascertained after the filing of the plaintiffs' complaint. To the extent that plaintiffs' expert has provided opinions relating to deviations of care, including failures to supervise and train staff and volunteers of this Big Brothers affiliate, Ms. Doty's conclusions are appropriate for jury consideration. The summary judgment motion cannot be granted for this defendant.

Defendant-Big Brothers Big Sisters of America ("Big Brothers of America") has filed for summary judgment on the basis that as the national organization it owed no duty of care to plaintiff-J.P. because it had no relationship with the child. (Control No. 14101647). The national organization also contends that it is not vicariously liable for alleged negligence of its affiliate defendant-Big Brothers of New Jersey. The record does not support either of these arguments.

The Pennsylvania Appellate Courts have enunciated several factors that trial courts must "*balance*" (emphasis in *Kenner v. Kappa Alpha Psi Fraternity, Inc.*, 808 A.2d 178, 182 (Pa. Superior Ct. 2002)), when determining whether a party owes another a duty. In *Sharpe v. St. Luke's Hospital*, 821 A.2d 1215 (Pa. 2003), the Supreme Court held at 1219:

> "The concept of duty is rooted in public policy, and the determination of whether a duty should be imposed upon an alleged tortfeasor involves a balancing of the following factors:
>
> (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

*Althaus v. Cohen*, 562 Pa. 547, 553, 756 A.2d 1166,

1169 (2000). The inquiry is regarded as a legal determination, assigned in the first instance to the trial court and subject to plenary appellate review. *Cf. Emerich v. Philadelphia Ctr. for Human Dev., Inc.*, 554 Pa. 209, 233, 720 A.2d 1032, 1044 (1998) ('While the existence of a duty is a question of law, whether there has been a neglect of such duty is generally for the jury'); *see also Brisbine v. Outside In Sch. of Experimental Educ., Inc.*, 799 A.2d 89, 95 (Pa. Super. 2002) ('Whether a duty exists is a question of law for the trial court to decide')."

When considering the five factors above, it is apparent that a duty of reasonable care to the child-J.P. does exist. First, Big Brothers of America created the programs, the networks, the affiliates and delivery of services by establishing, inter alia, minimum requirements for volunteer screening and match supervision applicable to J.P, Second, the social utility of a national organization's "zero tolerance of child abuse" is not in dispute when as early as the 1977 Report Big Brothers of America noted "ignoring [child abuse] won't make it go away". Third, this defendant acknowledges the nature of the devastation and injury to the children. The substantial harm of abuse was a foreseeable consequence if volunteers were not appropriately screened, selected and monitored. Fourth, the consequences of imposing this duty is minimal as plaintiffs point out at page 17:

"It is not burdensome of Big Brothers Big Sisters to use its authority under the affiliate agreement to prohibit overnight visits or for Big Brothers Big Sisters to let parents and participants in the program know about the scope and pattern of abuse in the program."

Fifth, there is a substantial public policy and public interest in Pennsylvania in assuring that the children are not physically and psychologically assaulted. Similarly, the Tennessee Court of Appeals concluded that strong public policy of prevention of child sexual abuse weighs heavily on imposing a duty. *Ms. B. v. Boys and Girls Club of Middle Tennessee,* Docket No. M2013-00812-COA-R3-CV at page 9:

"The strong public policy of preventing sexual child abuse unambiguously expressed by our general assembly, coupled with the foreseeability and gravity of harm, weigh heavily in favor of imposing a duty of care on [Big Brothers of America] to supervise its affiliates so as to protect against sexual child abuse. As noted above, however, the duty to control the conduct of a third-party, in this case, BBBSMT, does not arise in the absence of 'the means and ability to control the third party.' *Id.* (quoting *Newton v. Tinsley,* 970 S.W.2d 490, 492 (Tenn.Ct.App.1997)). Regardless of the extent to which [Big Brothers of America] chooses to exercise any right or ability to control its affiliates, [Big Brothers of America] has failed to carry its burden

in this case to affirmatively demonstrate that it did not possess the means and ability to control the acts of BBBSMT for the purposes of affirmatively negating mother's claims of negligent supervision and screening of Mr. Arnold; negligent failure to monitor N; negligent failure to ensure a safe environment; and negligence in the failure to ensure that the match specialist assigned to N was complying with organizational policy and procedures."

*See also, Kenner v. Kappa Alpha Psi Fraternity, Inc., supra,* 808 A.2d at 182-183, where the Superior Court held that confining one's focus on the relationship of the parties is not the standard in Pennsylvania. The Superior Court concluded that a national organization did have a duty to protect initiates from harm when all five factors are balanced by the courts.

Finally, although not dispositive, in response to the notion that "[Big Brothers of America] did not assume a duty to J.P.", Memorandum, page 13, this court must point to Donald L. Wolff's 1982 acknowledgement of "the public trust given us to protect the children...", page 3, and L.P. Reade's 1977 conclusions that, "...by studying the nature of these occurrences and the individuals and organizations involved, we can really develop methods of protecting the children with whom we deal.", page 2.

Next, Big Brothers of America asserts Big Brothers of New Jersey is not its agent. Big Brothers of America

seeks summary judgment on the basis that it cannot be held vicariously liable. This court does not agree.

Similar arguments were rejected by the Court of Appeals in Tennessee which provided a thorough overview of the national organization's structure, as well as the means and ability to control the affiliate's operations. *See, Ms. B. v. Boys and Girls Club of Middle Tennessee, supra,* pages 7-10. As mentioned at our hearing, judge Wieand reminded us in his dissenting opinion in *Myszkowski v. Penn Stroud Hotel, Inc.,* 634 A.2d 622 (Pa. Superior Ct. 1993), the issue of control to determine a master-servant relationship is a function for the jury when the precise nature and the relationship and the right to control is at issue. 634 A.2d at 631:

> "Broadly stated, if the agent is under the control of the employer, he is a servant; if he is not under such control, he is an independent contractor. *Feller v. New Amsterdam Casualty Co.,* 363 Pa. 483, 486, 70 A.2d 299, 300 (1950). The actual control exercised by an employer over the manner of work, however, is not determinative of the relationship; rather, it is the employer's right or authority to control which renders one an employee or servant and not an independent contractor. *See: Lutz v. Cybularz, supra* 414 Pa. Super. at 583, 607 A.2d at 1091. 'It is the exclusive function of the jury to determine, from the evidence, the precise nature of the relationship, except where the facts are not

in dispute, in which latter event the question becomes one for determination by the court.' *Melmed v. Motts*, 341 Pa. Super. 427, 430-431, 491 A.2d 892, 893 (1985) (citations omitted)."

On the record herein, there are many issues of fact raised by plaintiffs' expert, by the documents and by the discovery materials. As of 1991, Big Brothers of America promulgated numerous rules, regulations, standards, program manuals, evaluations and reports directed to their affiliates, including Big Brothers of New Jersey. *See*, plaintiffs' memorandum, pages 6-7, quoting the American Bar Association 1991 confidential evaluation. This court cannot conclude as a matter of law that Big Brothers of America did not possess the means, the manner or ability to control the acts and conduct of defendant-Big Brothers of New Jersey. A jury must assess the evidence and arguments.

## III. CONCLUSION

A motion for summary judgment may be granted only if there are no genuine issues of any material fact and the moving party is entitled to judgment as a matter of law. This court must resolve all doubts against the moving party. For all of the reasons set forth above the motions for summary judgment filed by James W. Richards, Big Brothers Big Sisters of Burlington, Camden and Gloucester Counties, and Big Brothers Big Sisters of America are denied.