J-A27016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| DOLORES RUSIEWICZ, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM J. CHASE, | : | |
| | : | |
| Appellee | : | No. 20 WDA 2014 |

Appeal from the Order Entered December 2, 2013,
In the Court of Common Pleas of Allegheny County,
Civil Division, at No. GD 13-004768.

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:　　　　　　　　**FILED DECEMBER 18, 2014**

Dolores Rusiewicz ("Appellant"), appeals from the order entered on December 2, 2013, that granted William J. Chase's ("Appellee") preliminary objections and dismissed her complaint.  We affirm.

At issue in this matter is the March 15, 2012 grievance letter that Appellee sent to multiple administrative offices at the University of Pittsburgh regarding an incident between Appellee's son and Appellant.  At all relevant times, both Appellant and Appellee were employed by the University of Pittsburgh.  Appellant worked as an Ombudsman in the Office of Student Appeals, and Appellee was a professor of Russian History.

On February 29, 2012, Appellee's son, Matthew Chase, sought to drop a class from his schedule.  There was a dispute and argument between

Appellee's son and Appellant regarding the signature on a University of Pittsburgh form.

In response to the situation, Appellee drafted the aforementioned grievance letter. The letter is reproduced below:

Ms. Cheryl Ruffin                                        15 March 2012
Employee Relations Specialist
Human Resources
100 Craig Hall
Pittsburgh, PA 15260

Filing of a grievance against Ms. Dolores Rusiewicz

Dear Ms. Ruffin:

I am writing to file a grievance against Ms. Dolores Rusiewicz, a staff member in the Student Financial Services office, and to request an investigation of her behavior, which I outline below. Given my status and the situation, I do not know if you are the appropriate person to address, but I assume that you will know best how to handle this grievance. My complaint centers on Ms. Rusiewicz's verbally abusive, demeaning, and intimidating treatment of a student (Matthew P. Chase) and her deliberate countermanding of the decision of an Assistant Dean's approval without proper investigation or authorization. As I am the father of the student who experienced Ms. Rusiewicz's unprofessional treatment, I admit that I have a personal bias. However, as a faculty member at the University for the past thirty-two years, I find her behavior to be absolutely unacceptable. Such behavior damages the hard work and fine reputation of the vast majority of staff and faculty who interact with students. Permit me to set the context for Ms. Rusiewicz's unprofessional and unjustifiable behavior.

On Tuesday, 28 February, Matthew Chase went to the Office of the Registrar to request a Late Drop for the course that he was taking in the School of Education (IL 1562). Matthew sought the Late Drop because he had come to the conclusion that he would be unable to complete the course's requirements

in the aftermath of his late brother's hospitalization. On 11 February, Matthew's brother was in an automobile accident that left him in a coma in the NeuroTrauma ICU at UPMC Presbyterian. On 27 February, when it was clear that his brother would remain in a vegetative state, Matthew and I made the decision to move his brother to a hospice, where he died on 3 March. The strain of his brother's condition was such that Matthew realized that he would be unable to complete the requirements for his class, especially the required group observations. Until his brother's accident, Matthew had attended all of his classes save for one class when he had influenza; his instructor had approved that absence. When Matthew visited the Office of the Registrar to request a Late Drop, he had with him a letter from the Critical Care Coordinator of the NeuroTrauma ICU and other paperwork from UPMC attesting to his brother's condition.

The staff in the Office of the Registrar treated Matthew in a very professional manner and informed him that he needed the approval of an Assistant Dean for his request for a Late Drop. As I was in my son's room in UPMC Presbyterian at the time, Matthew called me to tell me what he needed to do. I told him that I would accompany him to the A&S Dean's office in Thackeray Hall. There we met with Assistant Dean George Novacky. In light of the situation, Assistant Dean Novacky approved Matthew's request for a Late Drop; he signed and dated the appropriate paperwork. Matthew returned unaccompanied to the Office of the Registrar, where a staff member told him that he needed one final approval from the Office of Student Appeals in the Office of the Registrar's suite. On that day, Ms. Dolores Rusiewicz was in that office. In her dealing with Matthew, Ms. Rusiewicz was rude, verbally abusive, and unprofessional. She never asked Matthew why he sought the Late Drop; in fact, she claimed that there was no such policy as a Late Drop. Nor did she ask to see the paperwork from UPMC. Rather, she accused Matthew of never having gone to class, which was untrue, of lying, which was untrue, and of forging Assistant Dean Novacky's signature, which was untrue. Her tone throughout the conversation was hostile and demeaning. When Matthew asked her why, given her assertion, the Assistant Dean would approve such a request, she stated that the Assistant Dean did not know what he was talking about. She then crossed

out Assistant Dean Novacky's signature by making a large "X" across it. After Matthew stated that, "I do not want to be treated like shit," he rose to leave Ms. Rusiewicz's office. Matthew is not given to using profanity, but under the circumstances, his frustration was understandable. Ms. Rusiewicz followed him out of the office and told the staff members in the Office of the Registrar to call Campus Security. Rather than do so, a staff member got David Robert Carmen, who after getting a brief synopsis of the situation, went to Assistant Dean Novacky, who once again signed and dated the form for a Late Drop. Mr. Carmen returned to the Office of the Registrar and instructed a staff member there to input the Late Drop for Matthew. After hearing of the incident, I returned to the Office of the Registrar to thank Mr. Carmen and staff for their handling the situation with professionalism and empathy. At that time, I learned of Ms. Rusiewicz's name. Given my son Alex's subsequent death, it is only now that I have the ability to file this grievance.

As a longstanding member of the University community, I find Ms. Rusiewicz's behavior to be absolutely unacceptable. She subjected a student to verbal insults and abuse; she countermanded an Assistant Dean's order without any investigation or authorization; and she denied that the University even had a Late Drop policy. Had Matthew been a typical student, that is if his father was not a faculty member who happened to witness Assistant Dean Novacky's approval of the request for a Late Drop, Ms. Rusiewicz's unprofessional and demeaning behavior may not have come to light. Many students, uncertain about their rights, may well have let the situation pass. I do not know if Ms. Rusiewicz's behavior that day is typical or atypical for her. In this instance, that is irrelevant. What matters is that no student should not [sic] be exposed to such hostile treatment when making a legitimate request for the fulfillment of University policy. The vast majority of University staff members and faculty know this and treat students with respect. That Ms. Rusiewicz apparently does not do so damages the reputation and undermines the hard work of all staff members. Such behavior has no place at the University of Pittsburgh.

According to the Human Resources website on Disciplinary Concerns, "If an employee violates a University policy or rule or

is not meeting performance requirements, has been insubordinate, or has engaged in conduct affecting the workplace and/or other employees or students, a supervisor may take disciplinary action." Examples of grounds for dismissal include: "Threatening or intimidating students," including "abusive, demeaning, profane or threatening language to anyone," and "Insubordination and Falsification of documents." Ms. Rusiewicz's language and behavior was clearly intimidating, abusive, and demeaning; her willful destruction of Assistant Dean Novacky's signature constitutes both insubordination and a falsification of a University document.

Although I am not Ms. Rusiewicz's supervisor, in filing this grievance, I expect that the appropriate University officials will conduct a formal investigation of this incident and of Ms. Rusiewicz's behavior over time. Please inform me in writing of the results of this investigation.

Sincerely,

s/ William J. Chase

William J. Chase
Professor of History
Director, Urban Studies Program

Cc: Associate Vice Chancellor for Student Financial Services, Dennis DeSantis
Associate Provost Juan Manfredi
Associate Dean Richard Howe
Associate Dean John Twyning
Assistant Dean George A. Novacky

Appellant's Complaint, 3/13/13 Exhibit 1 (Grievance Letter, 3/15/12).

The University conducted an investigation into Appellee's claims, and on April 12, 2012, Attorney John Greeno of the University of Pittsburgh's Legal Department drafted the following memorandum relating his findings and conclusions:

TO:           Dolores Rusiewicz
FROM:         John Greeno
SUBJECT:      Investigation
DATE:         April 12, 2012
CC:           Dennis DeSantis

This is to advise you that I have completed my investigation into the allegations raised by William Chase with respect to your interaction with his son, Matthew, on or about February 29, 2012. I have concluded that you did not violate University policy, and I have so informed William Chase. My conclusion is that you correctly advised Matthew Chase that he did not have the correct signature on the Add/Drop form, and that the interaction degenerated due to an unfortunate combination of circumstances, including the tragic situation involved (of which you were not aware), Matthew's fragile state, and the failure of others to recognize the erroneous signature before sending Matthew to see you. I have recommended that members of all offices involved in this occurrence be reminded of the importance of obtaining pertinent information when assisting students.

There is no reason for anything related to this matter to be included in your departmental file, and I consider the matter to be closed. Thank you for your cooperation.

Appellant's Complaint, 3/13/13 Exhibit 2 (Human Resources Letter, 4/12/12).

On March 13, 2013, Appellant filed a 189 paragraph complaint in which she raised ninety counts of defamation of character and one count alleging intentional infliction of emotional distress. Appellee filed preliminary objections in which he averred that the complaint should be dismissed because Appellant failed to state a cause of action upon which relief could be granted. Preliminary Objections, 7/17/13, at ¶¶ 9, 16. On December 2,

2013, the trial court sustained Appellee's preliminary objections. The trial court concluded that Appellee's grievance letter was incapable of being defamatory because it asserted merely Appellee's opinions. Additionally, the trial court found that Appellant could not sustain her claim of intentional infliction of emotional distress as there was no extreme or outrageous conduct. The December 2, 2013 order dismissed Appellant's complaint with prejudice. This timely appeal followed.[1]

---

[1] As will be discussed in greater detail below, Appellee filed preliminary objections averring that Appellant failed to state a claim upon which relief could be granted. Preliminary Objections, 7/17/13, at ¶¶ 9, 16. While it appears from the preliminary objections that Appellee focused on Appellant's failure to present evidence of damages, Appellee did state, generally, that Appellant failed to state a claim upon which relief could be granted. In reaching its decision, the trial court treated Appellee's preliminary objections as a demurrer, and focused on whether the allegedly defamatory statement was an opinion. The trial court decided the preliminary objections on that issue and did not discuss damages. However, Appellant never challenged the trial court's decision to treat Appellee's preliminary objections as a demurrer and dispose of the preliminary objections on the basis that the statement was an opinion, and thus not defamatory. Additionally, Appellant has not presented a challenge on this issue in her appeal. Because Appellant never challenged the trial court's decision to focus on whether the statement at issue was an opinion as opposed to whether Appellant established damages, we deem it waived on appeal. Moreover, in her brief on appeal, Appellant assails only the trial court's determination that the statement at issue was an opinion and not capable of defamatory meaning. Accordingly, we will proceed with our discussion and review the trial court's decision as an order granting preliminary objections in the nature of a demurrer. ***See Dominski v. Garrett***, 419 A.2d 73 (Pa. Super. 1980) (stating that where preliminary objections were treated as a demurrer by the trial court, and where the appellant did not challenge the trial court's decision on those grounds, the reviewing court would treat the preliminary objections as a demurrer; the course of litigation would not be served by dismissing the objections).

J-A27016-14

On appeal, Appellant raises the following issue for this Court's consideration:

> Whether the Lower Court erred when it sustained Appellee's Preliminary Objections where underlying defamatory facts and an accusation of the crime of Forgery supported Appellant's defamation claims and intentional infliction of emotional distress claim.

Appellant's Brief at 12 (italicization omitted).

The standard of review we apply when reviewing a trial court's order granting preliminary objections in the nature of a *demurrer* is as follows:

> Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

**Feingold v. Hendrzak**, 15 A.3d 937, 941 (Pa. Super. 2011) (quoting **Haun v. Community Health Systems, Inc.**, 14 A.3d 120, 123 (Pa. Super. 2011)).

In order to succeed on a claim of defamation, the plaintiff bears the following burden of proof:

-8-

> **(a) Burden of plaintiff**.--In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:
>
> > (1) The defamatory character of the communication.
> >
> > (2) Its publication by the defendant.
> >
> > (3) Its application to the plaintiff.
> >
> > (4) The understanding by the recipient of its defamatory meaning.
> >
> > (5) The understanding by the recipient of it as intended to be applied to the plaintiff.
> >
> > (6) Special harm resulting to the plaintiff from its publication.
> >
> > (7) Abuse of a conditionally privileged occasion.

42 Pa.C.S. § 8343(a).

A defamatory statement is defined as follows:

> Defamation is a communication which tends to harm an individual's reputation so as to lower him or her in the estimation of the community or deter third persons from associating or dealing with him or her. Under Pennsylvania defamation law, only statements of fact can support an action for libel or slander, **not merely expressions of opinion. Further, whether a particular statement or writing constitutes fact or opinion is a question of law for the court to determine in the first instance. Additionally, it is within the trial court's province to determine whether the challenged statements are capable of having defamatory meaning.**

***Elia v. Erie Ins. Exchange***, 634 A.2d 657, 660 (Pa. Super. 1993)

(emphasis added).

Additionally, in order "to prevail on a claim of intentional infliction of emotional distress, Appellant[] must prove that [Appellee], by extreme and outrageous conduct, intentionally or recklessly caused [her] severe emotional distress." ***Brezenski v. World Truck Transfer***, 755 A.2d 36, 45 (Pa. Super. 2000).

Appellant argues that Appellee's grievance letter defamed her generally, accused her of forgery,[2] and as a result of Appellee's actions she has suffered from physical manifestations of anxiety and other maladies. Upon review, we conclude that Appellant is entitled to no relief.

The trial court aptly addressed this issue as follows:

> I find that such statements are not capable of a defamatory meaning because they are only the writer's opinions as to how [Appellant] performed her job.

> * * *

> In the present case, the statements in the letter were those of a disgruntled parent regarding an incident between [Appellant] and [Appellee's] son as reported by the son. These are expressions of opinion that may, in fact, be given little weight because opinions of disgruntled parents, even faculty member parents, tend to receive little weight. These expressions of opinion in [Appellee's] letter are probably less offensive than a newspaper article accusing a person who holds himself out as a

---

[2] Appellant's claim that Appellee allegedly accused her of the crime of forgery and thus defamed her, apparently stems from that part of the grievance letter wherein Appellee stated that Appellant crossed-out Assistant Dean Novacky's signature by making a large "X" across it. Appellant then links that statement to the part of the grievance letter that stated that falsification of documents is grounds for dismissal. Appellant's Brief at 27.

community activist of land speculation under the guise of being a community activist.[3]

> I am also dismissing [Appellant's] claims based on the tort of intentional infliction of emotional distress. To prevail on a claim of intentional infliction [of] distress, a plaintiff must prove that the defendant, by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress. ***Brezenski v. World Truck Transfer***, 755 A.2d 36, 45 (Pa. Super. 2000).

> [Appellant] made a large X across the Assistant Dean's signature approving a Late Drop. [Appellee] characterized this conduct as "a falsification of a university document." However, this is only defendant's opinion as to how the behavior should be characterized. This characterization does not constitute extreme and outrageous conduct.

Trial Court Opinion, 12/2/13, at 1-3.

We agree with the trial court's assessment that Appellee's letter was merely the opinion of a disgruntled parent, and it was incapable of defamatory meaning. ***Elia***, 634 A.2d at 660. Moreover, we further agree that Appellee's conduct was not outrageous, and therefore, there can be no cause of action for intentional infliction of emotional distress. ***Brezenski***, 755 A.2d at 45. We discern no abuse of discretion or error of law in the trial

---

[3] The trial court is referencing its earlier discussion of ***Alston v. PW–Philadelphia Weekly***, 980 A.2d 215 (Pa. Cmwlth. 2009) (stating that a newspaper article that referred to a neighborhood activist as "no more than a land speculator who cloaks himself in the guise of a community activist" was an expression of opinion and not actionable under law) (citing the Restatement (Second) of Torts §566, Comment C). Trial Court Opinion, 12/2/13, at 2.

court's conclusions, and therefore, we affirm the order granting Appellee's preliminary objections and dismissing Appellant's complaint.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/18/2014