J-A27037-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JANE E. DAVIS, JANE E. DAVIS, EXECUTRIX OF THE ESTATE OF ROBERT N. DAVIS, DECEASED, L.P.D, MINOR, C.N.D., MINOR, ROBERT N. DAVIS, ESTATE, DECEASED | : IN THE SUPERIOR COURT OF : PENNSYLVANIA : : : : |
| Appellants | : : |
| | : No. 1405 EDA 2018 |
| v. | : : : |
| VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AKTIENGESELLESCHAFT, ALSO KNOWN AS VOLKSWAGEN AG AND THE ESTATE OF ALFRED N. HANNA; HANNA'S AUTO & TRUCK RECYCLING; HANNA AUTO WORKS AND RECYCLING; AND HANNA NORTH PARTNERSHIP | : : : : : : : : : : : |

Appeal from the Judgment Entered June 11, 2018
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
2014-C-2951

| | |
|---|---|
| JANE E. DAVIS, JANE E. DAVIS, EXECUTRIX OF THE ESTATE OF ROBERT N. DAVIS, DECEASED, L.P.D, MINOR, C.N.D., MINOR, ROBERT N. DAVIS, ESTATE, DECEASED | : IN THE SUPERIOR COURT OF : PENNSYLVANIA : : : : |
| | : : |
| v. | : : No. 1496 EDA 2018 : |
| VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AKTIENGESELLESCHAFT, AND FAULKNER CIOCCA, VW | : : : : : : |

v.                                        :
                                          :
                                          :
THE ESTATE OF ALFRED N. HANNA;            :
HANNA'S AUTO & TRUCK RECYCLING;           :
HANNA AUTO WORKS AND                      :
RECYCLING; AND HANNA NORTH                :
PARTNERSHIP; THE GEORGE FAMILY            :
PARTNERSHIP; AND GEORGE REAL              :
ESTATE, LP                                :
                                          :
                                          :
APPEAL OF: VOLKSWAGEN AG                  :
                                          :

Appeal from the Order Entered June 11, 2018
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
2014-C-2951

BEFORE:  BOWES, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JULY 19, 2019**

In this crashworthiness case, Jane E. Davis – acting in her own capacity, as Executrix of the Estate of Robert N. Davis, Deceased, and as parent of L.P.D. and C.N.D. – brought this suit claiming a design defect in a Volkswagen Passat. A jury found Appellee Volkswagen Aktiengeselleschaft ("Volkswagen") not liable for Davis's damages.[1] On appeal, Davis challenges various jury instructions. We affirm.

---

[1] Volkswagen Group of America, Inc., and Faulkner Ciocca VW were named defendants. Prior to jury deliberation, the parties agreed that the verdict would be entered against Volkswagen Aktiengeselleschaft. N.T., 6/16/17, 3707.

- 2 -

Volkswagen cross-appeals and challenges the order denying its motion for summary judgment. Because we affirm the judgment entered in its favor, we do not address Volkswagen's cross appeal.

The accident at issue occurred in February 2012 in North Whitehall Township, Lehigh County. A vehicle driven by Alfred Hanna crossed the center line of a highway and struck a 2007 Volkswagen Passat driven by Decedent. The force of the collision forced the Passat from the road and shoulder.[2] When the Passat came to a rest, it was partially over the side of the shoulder and partially on the ground on the other side of the shoulder. The Passat was consumed by flames, and Decedent died as a result of injuries from the fire.

Davis instituted this suit and asserted several claims, including a strict liability claim based on an alleged design defect in the Passat's fuel tank.[3] Volkswagen answered the Complaint and asserted the affirmative defense of release. It later moved for summary judgment on that basis, arguing that

_____

[2] Hanna was ejected from his vehicle and found unresponsive on the side of the road.

[3] Volkswagen filed a joinder complaint against the Estate of Alfred Hanna, Hanna's Auto & Truck Recycling, Hanna Auto Works and Recycling, Hanna North Partnership (collectively "Hanna Defendants"), the George Family Partnership, and the George Real Estate LP (the "George Defendants"). The George Defendants filed a motion for summary judgment, which the trial court granted. The Hanna Defendants filed a motion for summary judgment based, in part, on a release signed by Davis in a settlement with Hanna and Hanna's insurance company. The trial court granted the motion as to all Hanna Defendants except the Estate of Alfred Hanna. It denied the motion as to the Estate, but ruled that the Estate was not required to appear at trial. Order, May 17, 2017, at 1 n.1.

Davis released her claims against Volkswagen when she settled with Hanna and his insurance company and signed an allegedly general release. The trial court denied the motion.

As trial neared, Davis filed a motion *in limine* seeking to preclude retroactive application of *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014). In the alternative, Davis asked the court to apply the consumer expectation test. Motion in Limine, filed Apr. 25, 2017. Volkswagen argued that *Tincher* applied fully to this case and asserted that the court should employ the risk-utility test, as the only test appropriate to strict product liability cases involving complex products such as automobiles. The trial court ordered that whether the vehicle was in a "defective condition" was a question of fact to be answered by the preponderance of the evidence, and that Davis could establish the existence of a defective condition under either the consumer expectation test or the risk-utility test.[4]

Trial commenced in May 2017, and extended over several weeks. An eye-witness to the accident testified. The eye-witness was unsure when the fire started, N.T., 5/25/17, at 197, 202-03, and gave various descriptions of the fire and its location. She did, however, testify that she felt safe enough to approach the Passat in an effort to smash its windshield and rescue Decedent.

---

[4] The trial court also held that *Tincher* applied to this case and that evidence of compliance with industry standards was not relevant to whether a defective condition existed.

*Id.* at 217. She was unable to do so and a forensic pathologist testified that Decedent died of fire-related injuries. *Id.* at 130.

The jury also heard from experts from both parties regarding the Passat's fuel tank, and whether there was a defect of the fuel tank which caused harm. The trial court summarized Davis's theory of the case at trial as follows:

> [Davis] contend[ed] that as the Passat was being pushed over the shoulder of the road, it struck and sheared off all but a remnant of a metal pole, the pole's jagged edge punctured the Passat's fuel tank allowing its contents to escape. The Passat was quickly engulfed in a fuel-fed fire from which Decedent did not escape. [Davis] claimed the Passat's fuel tank was designed defectively and is therefore a factual cause of the Decedent's injuries and resulting death.

Trial Court Opinion, filed Apr. 13, 2018, at 2. Volkswagen argued, in part, that the Passat's fuel tank was not defective and that, in any event, the fire started in the car's engine compartment, not near the fuel tank. N.T., 6/19/17, at 3915-16.

The parties presented the court with proposals for jury instructions. Davis included an instruction based on the consumer expectation test and offered, in case the court denied that instruction, a proposed instruction on the risk-utility test. Volkswagen proposed an instruction on the risk-utility test. At the charging conference, the trial court stated it would instruct the jury on both tests and said, "As I understood it from the outset, the Plaintiff wanted the consumer expectation test only, and the Defendants wanted the risk-utility

test, only. And, as I read the instruction, it could be either, and[/]or. I am going to give both, and you can fight it out." N.T., 6/16/17, at 3713.

The trial court and the parties also discussed at the conference whether the court should instruct the jury that Hanna was negligent and that his negligence caused the collision. *Id.* at 3747-3754. Davis objected. *Id.* at 3753-54; N.T., 6/19/17, at 3811-12. The parties also discussed the concurrent cause instruction. N.T., 6/16/17 at 3710. Further, Davis requested that if the court directed a verdict as to Hanna, that the verdict slip state that Hanna caused "some harm." N.T., 6/19/17, at 3811. The court ruled that it would instruct the jury that Hanna was negligent, his negligence caused the collision, and his negligence caused harm to Decedent.

In addition, when discussing the causation question on the verdict slip, Davis argued that the verdict slip should ask the jury whether the defect was a "factual cause." *Id.* at 3755. Volkswagen argued the question on the verdict slip should ask whether the defect was a "substantial factor." *Id.* The court determined it would use the term "factual cause."

The trial court's jury instructions relevant to this appeal were as follows:

> The plaintiffs have the burden of proving that each of the following is more likely true than not. One, the design of the Passat's fuel tank was defective; and two, the defective design of the Passat's fuel tank was a factual cause in bringing about the harm. The Plaintiff also has the burden of proving the extent of damages caused by the Defendant's defective design.
>
> . . .

You have heard testimony to the effect the collision was caused by the careless driving of Mr. Hanna; specifically, that he crossed the double yellow lines two times, and then a third time when he collided with Mr. Davis's Passat. That evidence was unrebutted. Based upon that evidence, I have concluded that Mr. Hanna was negligent in having caused the collision, and that his negligence caused harm to Mr. Davis.

That collision caused Mr. Davis's Passat to be pushed off the road, and ultimately over the concrete foundation or retaining wall. We also know Mr. Davis's Passat caught fire and he perished in it.

This is not a criminal case, it is a civil case. And a civil case deals with a relationship between private parties, that the law imposes on us as members of society. It deals with how we relate to each other. For example, we all have a duty to use reasonable or ordinary care when operating a motor vehicle, or keeping our sidewalks free and clear of ice and snow.

Reasonable or ordinary care is the level of care a reasonably careful person would use under the circumstances presented at that time, for one[']s own safety, and to avoid injury to others. If you violate that duty, we say you are negligent. Mr. Hanna was careless in the way he drove his Acura, and in so doing, he violated his duty to Mr. Davis. That is why Mr. Hanna was negligent.

The law imposes a more stringent duty or standard upon a manufacturer of products designed to be used by the public. It is a duty that is higher than reasonable, or ordinary negligence. It is called strict liability.

In other words, a manufacturer may have been careful in designing a product; that is, not careless or negligent, but still may have designed the product defectively.

. . .

So let me restate the general rule of strict liability as it relates to the design of the Passat, and specifically to the fuel tank. If you find the Passat lacked an element necessary to make it safe for its intended use, specifically a shield on the underside of the fuel tank, you must conclude the Passat

had a defective design with respect to its fuel tank, in which case Volkswagen will be liable for all harm caused by that failure.

Under the law, a manufacturer of a defective product is strictly liable for the injuries caused by such defect, even if the manufacturer has taken all possible care in the design of the product. In other words, in making that determination, negligence or carelessness is not part of your consideration.

Whether Volkswagen exercised all possible care in the design of the fuel tank is not the issue. If the design of a product is not safe, the manufacturer is responsible for all resulting harm. As I said, one can be careful, but still have designed a defective product. The issue is whether the design of Volkswagen's fuel tank was defective, not whether Volkswagen exercised due care.

There are two tests that you may use to determine whether the design of the fuel tank was defective. You may use either or both of these tests.

The first test is the consumer expectation test. To establish their claim under the consumer expectation test the Plaintiffs must prove all of the following: One, that Volkswagen designed the product; and two, the product did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended way; and three, the product's defective condition was a factual cause of harm. In determining whether a product's condition was defective under this test, you may consider the following factors: One, the nature of the product; two, the identity of the user; three, the product's intended use; four, the intended user of the product; and/or five, any express or implied representations by Volkswagen.

The second test is called the risk-utility test. To establish their claim under the risk-utility test, the Plaintiffs must prove the following: One, that Volkswagen designed the product; two, a reasonable person would conclude that the possibility and seriousness of harm outweighed the burden or cost of making the product safe; and three, the product's defective condition was a factual cause of harm to Mr. Davis.

To decide whether the product is defective under this test, you may consider the following factors: The seriousness of the potential harm resulting from the use of the product, the likelihood that the harm would occur, the feasibility of an alternative safer design at the time of the manufacture or sale of the product, the cost of an alternative design, and or the disadvantages of an alternative design.

A product like the Volkswagen Passat can be defective in design if it is not crashworthy. Vehicle manufacturers have a duty to design and build vehicles that are crashworthy. Crashworthiness is the design or protection that a motor vehicle affords drivers and passengers against personal injury or death as the result of a motor vehicle accident.

Liability for not marketing a crashworthy vehicle will attach, even though the defect in design did not cause the initial accident or impact. This means that manufacturers like Volkswagen must design vehicles with the understanding that accidents happen; that is, accidents are a use of its products.

And if you find that the Passat was not crashworthy, then the Volkswagen Defendants must be held responsible for those injuries which were increased or enhanced due to an unsafe design feature in the vehicle's fuel tank system.

Under the evidence presented and the claims made here, if you find that the Passat's fuel tank was defective and that a defect was a factual cause of Mr. Davis's fatal injuries, and if you find that an alternative design would have reduced the severity, or avoided his fatal injuries, then the Volkswagen Defendants are legally responsible.

If you find that the product was defective, Volkswagen is liable for all harm caused to the Plaintiff by such defective condition. A defective condition is the factual cause of harm, if the harm would not have occurred absent the defect.

The Plaintiffs are required to prove only that the defect was a factual cause of damages beyond those that were probably caused by the original impact. The Plaintiffs are not required to prove that the defect caused the accident or initial impact. Also, the Plaintiffs are not required to prove

that the defect caused specific injuries that were not the result of the original impact or collision.

Something is a factual cause of harm if it played a role in causing injury. In determining factual cause, you must decide whether the event was an actual or real factor, in connection with the harm sustained.

However, factual cause does not mean it must be the only, primary, or even the most important factor in causing harm. A cause may be found to be a factual cause, as long as it contributes to the harm in a way that is not minimal or insignificant.

If you decide the design of Volkswagen's fuel tank was defective, and Mr. Davis was harmed because of that defective design, then you must find in favor of the Plaintiffs and against Volkswagen. If you find the design of Volkswagen's fuel tank was not defective, or that Mr. Davis was not harmed by that design, then you must find in favor of Volkswagen, and against the Plaintiffs.

Volkswagen contends that Mr. Hanna was solely responsible for certain harm suffered by the Plaintiffs. Volkswagen has the burden of proving by a fair preponderance of the credible evidence, that the Plaintiff's injuries are divisible, and the defective product did not contribute to this particular injury.

If you find that Volkswagen has not met this burden, you must find that the Defendants are liable for all of the Plaintiff's injuries caused by the Defendant.

Remember, I told you earlier that I found Mr. Hanna caused the collision, and that that collision was a factual cause of harm to Mr. Davis. The verdict slip which I will go over with you shortly, will exclude [sic] the name of Mr. Hanna's estate, even though it did not participate in this trial. It does not matter that Mr. Hanna's estate did not participate in this trial.

You will be asked on the verdict slip to apportion harm between Volkswagen, if you find the design on the fuel tank was defective and Mr. Davis was harmed because of that defective design, and Mr. Hanna. You should express that

- 10 -

apportionment in the form of a percentage. Together those percentages must total one hundred percent.[5]

N.T., 6/19/17, at 4003-12. Following the charge, the trial court noted that all of the parties' prior objections were preserved. *Id.* at 4023.

The following jury slip, which included a directed verdict as to Hanna's negligence and that his negligence caused harm, was submitted to the jury:

**QUESTION NO. 1**

Was the 2007 Volkswagen Passat fuel tank defective and not crashworthy?

If your answer to Question No. 1 is "Yes," then proceed to Question No. 2.

. . .

<u>**QUESTION NO. 2**</u>

Was the defective fuel tank a factual cause in bringing about harm to Robert Davis? . . .

---

[5] The Pennsylvania Supreme Court granted a Petition for Allowance of Appeal in *Roverano v. John Crane, Inc.*, to address the following questions regarding apportionment of damages:

(1) Whether, under this issue of first impression, the Superior Court misinterpreted the Fair Share Act 42 Pa.C.S. Sec. 7102 in holding that the Act requires the jury to apportion liability on a percentage basis as opposed to a per capita basis in this strict liability asbestos case?

(2) Whether, under this issue of first impression, the Superior Court misinterpreted the Fair Share Act in holding that the Act requires the jury to consider evidence of any settlements by the plaintiffs with bankrupt entities in connection with the apportionment of liability amongst joint tortfeasors?

190 A.3d 591 (Table) (Pa. 2018).

If your answer to Question No. 2 is "Yes," then proceed to Question No. 3.

If your answer to Question No. 2 is "No," then you have found in favor of Volkswagen and should not answer any further questions and you should return to the courtroom.

**QUESTION NO. 3**

Was Alfred Hanna negligent?

Answer: Yes __XX__

. . . .

**QUESTION NO. 4**

Was Alfred Hanna's negligence a factual cause in bring about harm to Robert Davis?

Answer: Yes __XX__

Verdict, filed 6/27/17; Br. of Defendant Volkswagen AG in Opposition to Plaintiff's Motion for Post-Trial Relief Pursuant to Rule 227.1, Pa.R.C.P., at Exh. B.[6]

The found that the Passat had a defective fuel tank and was not crashworthy, but that the defective fuel tank did not bring about harm to Decedent.

Davis filed post-trial motions, which the trial court denied. Davis filed a notice of appeal. Volkswagen filed a cross-appeal.

Davis raises the following issues:

1. Did the Trial Court commit legal error by refusing to grant a new trial where it failed to properly instruct the jury regarding "concurrent liability," a legal and factual issue

---

[6] The verdict slip also included questions as to apportionment of liability and damages.

raised by the evidence in this crashworthiness case and addressed by the arguments of the parties?

2. Did the Trial Court abuse its discretion or commit legal error by refusing to grant a new trial where the Trial Court erroneously directed a verdict as to negligence and causation against the driver-defendant where uncontradicted evidence established decedent perished from fire-related injuries caused by Volkswagen's failure to market a crashworthy vehicle (as found by the jury) and no evidence suggested that the driver-defendant's negligence actually caused decedent's fatal injuries?

3. Did the Trial Court abuse its discretion or commit legal error by refusing to grant a new trial where the Trial Court failed to properly instruct the jury regarding Volkswagen's duty to market a crashworthy vehicle, a strict liability theory which is not obviated by the negligence of driver-defendant, as addressed in Appellants' Requested Special Jury Instruction # 49?

4. Did the Trial Court abuse its discretion or commit legal error by refusing to grant a new trial where the Trial Court failed to properly instruct the jury regarding "proximate cause" in the context of a crashworthiness claim that the product defect actually caused the fatal injuries, irrespective of the accident's originating negligence, as addressed in Appellants' Requested Special Jury Instructions # 47, 51, 53, 55 and 58?

5. Did the Trial Court abuse its discretion or commit legal error by refusing to grant a new trial where the Trial Court conflated the distinct concepts of "factual" and "proximate" causation and by submitting to the jury an erroneous verdict slip containing an unnecessary inquiry in this crashworthy case regarding "factual causation?"

6. Did the Trial Court abuse its discretion or commit legal error by refusing to grant a new trial where the jury's verdict was inconsistent in that the jury actually concluded that Volkswagen had marketed a defective, not crashworthy vehicle (thereby establishing strict liability), yet also strangely concluded that the defect was not sufficient to establish Volkswagen's liability?

- 13 -

7. Did the Trial Court abuse its discretion or commit legal error by refusing to allow Appellants to pursue their chosen theory of liability, as commanded by the Pennsylvania Supreme Court in *Tincher v. Omega-Flex, Inc.*, 104 A.3d 328 (Pa. 2014)?

Davis's Br. at 3-5 (suggested answers omitted). Davis raises seven questions presented, but presents her argument in five sections, as she argues questions three, four, and five in the same section.

Volkswagen raises one issue in its cross-appeal:

Where Plaintiff signed a release stating "Plaintiff acknowledges and agrees that the release and discharge set forth above is a general release," with no reference to joint tortfeasors, was the release a general release, extinguishing Plaintiffs' right to bring a subsequent crashworthiness action?

Volkswagen's Br. at 1.

"The power to grant a new trial lies inherently with the trial court and we will not reverse its decision absent a clear abuse of discretion or an error of law, which controls the outcome of the case." *Maya v. Johnson & Johnson*, 97 A.3d 1203, 1224 (Pa.Super. 2014) (quoting *Siegal v. Stefanyszyn,* 718 A.2d 1274, 1275 (Pa.Super.1998)) (alteration in original).

Davis challenges the jury instructions and verdict slip. We review jury instructions and verdict slips for an abuse of discretion. *Amato v. Bell & Gossett*, 116 A.3d 607, 621 (Pa.Super. 2015); *Seels v. Tenet Health Sys. Hahnemann, LLC*, 167 A.3d 190, 208 n.5 (Pa.Super. 2017) (noting courts address jury instructions and wording of verdict slip together, using same standard). The "trial court has wide discretion in fashioning jury instructions,"

and it is "not required to give every charge that is requested by the parties." **Amato**, 116 A.3d at 621. In reviewing the jury instructions, we must "determine whether the trial court abused its discretion or offered an inaccurate statement of law controlling the outcome of the case." **Tincher**, 104 A.3d at 351. "A jury charge is adequate unless the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error." **Id.** (internal quotation marks and citations omitted). This court will not grant a new trial for an inadequate charge "unless there is a prejudicial omission of something basic or fundamental." **Raskin v. Ford Motor Co.**, 837 A.2d 518, 521 (Pa.Super. 2003) (quoting **Stewart v. Motts**, 654 A.2d 535, 540 (Pa. 1995)). Further, when reviewing a charge "we must not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety." **Id.** (quoting **Stewart**, 654 A.2d at 540).

## I. Concurrent Causation and Directed Verdict

Volkswagen argues that Davis waived her challenge to the causation jury instructions and that the challenge to the directed verdict is moot. We disagree. Davis objected to the instruction as to Mr. Hanna's liability and wording of the verdict slip, arguing that if a directed verdict was included on the verdict slip, it should say Mr. Hanna was the cause of "some harm." N.T., 6/19/17, at 3811. The court included on the verdict slip a finding that Hanna was negligent and his negligence was "a factual cause in bringing about harm" to Decedent. In addition, the parties and the court discussed the concurrent

cause instructions, and the court informed the parties that all objections were preserved. Therefore, we decline to find this issue waived. In addition, contrary to Volkswagen's claim, the directed verdict is not moot merely because the jury did not reach the apportionment issue. The issue is not whether the jury failed to apportion damages. Rather, the issue is whether the jury instructions as to the directed verdict and concurrent liability confused or misled the jury.

### A. Concurrent Cause Instructions

Davis claims the jury instructions did not adequately explain concurrent liability, and that the instructions "glossed over the vitally important maxim that multiple defendants may b[e] 'concurrently liable' for resulting injuries." Davis's Br. at 15. She argues that the instructions did not adequately inform the jury that "multiple, independent factors may combine to constitute multiple 'factual causes' of injury" in a crashworthiness claim. *Id.* at 17. She notes that the failure to adequately instruct as to concurrent liability "was further exacerbated" by the trial court's entry of a directed verdict concluding that Hanna was negligent and his negligence was a "factual cause" of the collision, and by repeating this factual cause finding throughout the instruction. *Id.* at 20. She also notes the trial court did not mention that the plaintiffs argued that the injuries suffered from the initial collision were separate from the fire-related injuries that she claimed caused Decedent's death.

Under Pennsylvania tort law, "multiple substantial factors may cooperate to produce an injury[] and . . . concurrent causation will give rise to joint liability." *Harsh v. Petroll*, 887 A.2d 209, 218 (Pa. 2005) (internal citations omitted). Accordingly, "a defendant is not relieved from liability because another concurring cause is also responsible for producing injury." *Powell v. Drumheller*, 653 A.2d 619, 622 (Pa. 1995).

Here, portions of the trial court's instructions may seem to be misleading when viewed in isolation. The trial court made multiple references to the negligence of Hanna and that Hanna's negligence was a cause of the collision and harm, without contemporaneously clarifying that there could be more than one cause. N.T., 6/19/2017, at 4004-5117. The court should have clarified, at the same time it informed the jury of Hanna's negligence, that the jury could also find that other factors caused harm.

We, however, cannot view these statements in isolation. Rather, we must view the jury instructions as a whole and, when we do so, we conclude that the jury instructions did not constitute an abuse of discretion. Contrary to Davis's arguments, the court adequately informed the jury as to concurrent liability and that any defect could be a cause of harm, and that Volkswagen must be found liable if a defect on the Passat caused harm.

The court's instructions made these points several times:

- The Court instructed that if the Passat's fuel tank had a defective design then "Volkswagen will be liable for all harm caused by that failure." N.T., 6/19/17, at 4007.

- 17 -

- The court instructed that "[l]iability for not marketing a crashworthy vehicle will attach, even though the defect in design did not cause the initial accident or impact" and that "if you find that the Passat was not crashworthy, then the Volkswagen Defendants must be held responsible for those injuries which were increased or enhanced due to an unsafe design feature in the vehicle's fuel tank." *Id.* at 4010.

- The court instructed that "[a] defective condition is the factual cause of harm, if the harm would not have occurred absent the defect" and that Davis was "required to prove only that the defect was a factual cause of damages beyond those that were probably caused by the original impact." *Id.* at 4010-11.

- The court instructed that Davis was "not required to prove that the defect caused the accident or initial impact. Also [Davis is] not required to prove that the defect caused specific injuries that were not the result of the original impact or collision." *Id.* at 4011.

- The court defined factual cause, stating "[s]omething is a factual cause of harm if it played a role in causing injury. In determining factual cause, you must decide whether the event was an actual or real factor, in connection with the harm sustained." *Id.*

- The court specifically addressed concurrent liability, instructing that "factual cause does not mean it must be the only, primary, or even the most important factor in causing harm. A cause may be found to

be a factual cause, as long as it contributes to the harm in a way that is not minimal or insignificant." ***Id.***

- The court further instructed as to apportionment, noting that "if you find the design on the fuel tank was defective and Mr. Davis was harmed because of that defective design, and Mr. Hanna. You should express that apportionment in the form of a percentage. Together those percentages must total one hundred percent." ***Id.*** at 4012.

Accordingly, when the instructions are viewed as a whole, we conclude the trial court did not abuse its discretion in issuing its instructions as to causation. Although the instructions regarding the directed verdict could have been more clear, the instructions did not omit any instruction and the trial court adequately instructed the jury that it must find Volkswagen liable if it found that the Passat had a defect and that the defect caused harm to Decedent. ***Compare Estate of Hicks v. Dana Cos., LLC***, 984 A.2d 943, 975 (Pa.Super. 2009) (*en banc*) (finding although part of instructions may have been confusing, any confusion was eliminated when court restated instructions as to burden of proof and causation and instructions clearly and adequately expressed burden of proof); ***with Colville v. Crown Equip. Corp.***, 809 A.2d 916, 927 (Pa.Super. 2002) (finding plaintiff prejudiced where trial court failed to instruct on crashworthiness even though evidence supported theory).

**B. Directed Verdict**

Davis further argues the trial court erred when it took from the jury the apportionment of damages and determination of liability. She claims the court erred by directing a verdict against Hanna on the verdict slip and instructing the jury that Hanna was negligent and his negligence was a cause of harm to Decedent. She argues that due to the deficient instructions on concurrent liability, the directed verdict, and the verdict slip, "the jury erroneously reached the inescapable conclusion that the trial court was instructing the jury that Hanna, alone, was factually responsible for all of the 'harm' suffered by" Decedent. *Id.* at 27-28. Davis argues the trial court erred in expanding the directed verdict from adjudicating negligence of factual causation of the collision to "fully apportioning Davis'[s] harm." *Id.* at 28.

The trial court did not err in directing a verdict against the Hanna estate as to liability and causation. It was undisputed at trial that Hanna was negligent and that his negligence caused harm to Decedent. *McCandless v. Edwards*, 908 A.2d 900, 903 (Pa.Super. 2006). Further, contrary to Davis's claim, the finding that Hanna's negligence caused harm to Decedent did not prevent the jury from finding that a defect in the Passat also caused harm to Decedent. Rather, as discussed above, the court instructed jury that if it found the Passat was defective and that the defect caused harm to Decedent, it must find Volkswagen liable. Here, the jury found there was a defect, but that the defect did not cause Decedent's fire-related injuries. Such a finding was supported by the evidence, including the eye-witness testimony.

## II. Defect and Causation Instructions

We will address Davis's third through fifth issues together, as Davis argues them together.[7] Davis argues the trial court "conflated 'factual cause' with 'proximate cause'" by omitting proximate causation from the jury instructions and "conflating factual with proximate causation on the verdict slip." Davis's Br. at 35. She claims the failure to instruct as to proximate causation "was compounded by" the verdict slip, which in her view "essentially asked the jury to consider the question of 'factual causation' twice." Davis's Br. at 37.

To the extent Davis argues that the court erred in using the term "factual cause," rather than "substantial factor," we conclude she has waived the issue. At the conference, it was Volkswagen – not Davis – that objected to the use of the term "factual cause." N.T., 6/16/17, at 3705. Davis's proposed instructions used the term "factual cause" and she did not object at the conference to use of the term "factual cause."[8] *Id.* To the extent Davis argues

---

[7] Although in the third issue, Davis challenges the crashworthiness instruction, and the argument section of her brief contains law as to crashworthiness, she presents no developed argument against the crashworthiness instruction. Instead, her argument states that "crashworthiness claims similarly include two overall burdens of proof: 'factual causations' (i.e., the defect in the design) and 'proximate causation' (i.e., the legal nexus between the defect and the injury suffered)." In applying the law to the facts of this case, Davis then focuses on proximate and factual causation. She thus waived any contention that the crashworthiness instruction was not proper.

[8] At the conference, when discussing the proximate causation instructions, the trial court stated that it would use the term "factual cause" rather than the term "substantial factor," N.T., 6/16/17, at 3702-04, 3755. As this Court has noted, "[t]he term 'factual cause' replaced the previously-used terms

that the court failed to instruct as to proximate cause, we conclude the claim lacks merit.

The trial court found:

> Plaintiffs impermissibly conflate proximate cause and factual cause. The instructions given to the jury largely mirrored and were virtually indistinguishable from the standard suggested instructions associated with such a charge. *Compare* Pa. SSJ1(Civ) 16.70,

>> If you find that the product was defective, the defendant is liable for all harm caused to the plaintiff by such defective condition. A defective condition is the factual cause of harm if the harm would not have occurred absent the defect, . . . The plaintiff is required to prove only that the defect was a factual cause of damages beyond those that were probably caused by the original impact. The plaintiff is not required to prove that the defect caused the accident or initial impact. Also, the plaintiff is not required to prove that the defect caused specific injuries that were not the result of the original impact or collision.

> *with* N.T., Vol. 16 at 2010-11.

>> If you find that the product was defective, Volkswagen is liable for all harm caused to the Plaintiff by such defective condition. A defective condition is the factual cause of harm, if the harm would not have occurred absent the defect. The Plaintiffs are required to prove only that the defect was a factual cause of damages beyond those that were probably caused by the original impact. The Plaintiffs are not required to prove that the defect caused the accident or initial impact. Also, the Plaintiffs are not required to prove that the defect caused specific injuries that were not the result of the original impact or collision.

---

'substantial factor' and 'legal cause' in the standard jury instructions." *Gorman v. Costello*, 929 A.2d 1208, 1213 n.7 (Pa.Super. 2007) (citing Subcommittee Note to Suggested Standard Jury Instruction Civ. 3.00).

Furthermore, Plaintiffs' Requested Jury Instructions as to causation and the Consumer Expectation Test were closely tracked in the actual jury instruction given at trial. *Compare* Pls.' Proposed Jury Instruction Nos. 47,

In order for a defect in a product to be a factual cause, the defect must have played a real role in causing the injury. Therefore, in determining factual cause, you must decide whether an unsure feature in the Passat was more than an insignificant factor in bringing about harm to Robert Davis. Under Pennsylvania law, a defect can be a contributing factor if the defect was an actual or real factor in connection with the injury. However, factual cause does not mean it must be the only, primary or even the most important factor in causing the injury. A cause may be found to be a factual cause as long as it contributes to the injury in a way that is not minimal or insignificant.

*and* Pls.' Proposed Jury Instruction No. 63,

A product is defective under the Consumer Expectation Test if [there is a finding]...

a. That Volkswagen manufactured/distributed/sold the Volkswagen Passat;

b. That the Volkswagen Passat did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way;

c. That Robert Davis was harmed; and

d. That the Volkswagen Passat's failure to perform safely was a substantial factor in causing Robert Davis fatal injuries.

*with* N.T., Vol. 16 at 4011,

Something is a factual cause of harm if it played a role in causing injury. In determining factual cause, you must decide whether the event was an actual or real fact[or], in connection with the harm sustained. However, factual cause does not mean it must be the only, primary, or even the most important factor in causing harm. A cause may be found to be a factual

cause, as long as it contributes to the harm in a way that is not minimal or insignificant.

*and* N.T .. Vol. I 6 at 4008.

> To establish their claim under the consumer expectation test the Plaintiffs must prove all of the following:
>
> One, that Volkswagen designed the product; and two, the product did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended way; and three, the product's defective condition was a factual cause of harm.

1925(a) Op. at 5-6.

The instructions, which differed in no material way from the instructions Davis proposed and were largely identical to the Pennsylvania Standard Civil Jury Instructions, were proper.

### III. The Verdict Did Not Establish Liability and Was Not Internally Inconsistent.

Davis further argues that the instructions rendered the verdict slip "internally inconsistent." Davis's Br. at 39. She argues that, pursuant to the jury instructions, to find the fuel tank "not crashworthy," the jury had to conclude the car was defective, the defect caused the injuries, and the defect enhanced the injuries beyond those caused by the initial accident. She then concludes that, because of those findings, the jury had to conclude "that 'factual causation' (as that term was defined by the Trial Court) was satisfied," which Davis claims rendered redundant the separate instruction that the jury consider factual causation. *Id.* at 40.

Davis has cited to no place in the record prior to her post-trial motion where she stated that the instruction as to defect would require a finding as to causation, and we have found none. She has therefore waived this claim.

Even if she had not waived the claim, we would conclude it lacked merit. The instructions set forth the elements of the strict products liability cause of action without misleading the jury about the causation analysis. For example, for the consumer expectation test, the trial court explained that the Plaintiffs bore the burden of proving: "One, that Volkswagen designed the product; and two, the product did not perform as safely as an ordinary consumer would have expected when used in an intended way; and three, the product's defective condition was a factual cause of harm." N.T., 6/19/17, at 4008. It then stated the factors the jury should consider to determine whether the product had a defect, that is, whether the product did not perform as safely as an ordinary consumer would have expected when used in an intended way. The court then explained that Davis was "required to prove only that the defect was a factual cause of damages beyond those that were probably caused by the original impact." *Id.* at 4010-4011. The risk-utility instruction similarly informed the jury that it first needed to determine whether the product was defective, and then turn its attention to factual cause. Read as a whole, the instructions adequately informed the jury of the law to apply.

## IV. Risk-Utility Test Instruction

In her final issue, Davis argues that the trial court erred in instructing the jury on both the consumer expectations test and the risk-utility test, when

- 25 -

she litigated her case under the consumer expectations test and only asked the court to instruct on that test. She points out that in *Tincher*, the Supreme Court stated that plaintiff is the "'master' of [her] own claims. . . ." Davis's Br. at 42. She claims by including an instruction as to the risk-utility test, the trial court prevented Davis from "trying this case under [her] chosen theory of liability." *Id.*

The trial court concluded, in part:

> [Davis] supposes that, as she is the master of her own claims, the court should have limited its jury instructions solely to an explanation of the Consumer Expectation Test. The Court in *Tincher* did hold that "the plaintiff is the master of the claim in the first instance," when referring to the ability of plaintiffs' counsel to determine which path or paths to pursue in making out its prima facie case of strict liability. *See Tincher v. Omega Flex, Inc.*, 304 A.3d 328, 426 (Pa. 2014). In accordance with *Tincher*, a plaintiff can predicate a strict liability claim on either the Consumer Expectation Test or the Risk-Utility lest. *See id.* With that said, the *Tincher* decision makes it clear that the Consumer Expectation Test is inappropriate when the risk of injury is "outside the ordinary consumer's contemplation" because use of that test may result in "arbitrary application of the strict liability doctrine; jury determinations of consumer expectations regarding the presence of danger are unpredictable. This difficulty is characteristic of the products of relatively complex design." *Id.* at 388. Furthermore, "[w]here evidence supports a party-requested instruction on a theory or defense, a charge on the theory or defense is warranted." *Id.* at 428-29.

1925(a) Op. at 13.

We conclude the trial court did not abuse its discretion. While it is true that the *Tincher* Court stated that the "plaintiff is the master of the claim in the first instance," that is not all the Court said. *Tincher*, 104 A.3d at 406. In

addition to making that point, it cautioned that "[a] defendant may also seek to have dismissed any overreaching by the plaintiff via appropriate motion and objection." *Id.* at 407. It further noted that "[t]he trial court is to act in its ordinary gate-keeper role, *e.g.*, monitoring litigation, mediating or adjudicating any subsidiary differences, and pending objection and motions, including those seeking to narrow, or expand, the theories of litigation to be pursued at trial." *Id.*

Perhaps more to the point, the Court also said, "Where evidence supports a party-requested instruction on a theory or defense, a charge on the theory or defense is warranted." *Id.* at 408. That is precisely the situation here. In this case, the defense admitted into evidence expert testimony that the fuel tank was not punctured, and that the fire started in the engine, not near the fuel tank. This evidence put the risk-utility test into issue, and the court properly instructed as to that test.[9]

Davis's additional contention that the trial court instructing the jury on the risk-utility test somehow prevented her from litigating the case under her chosen theory – the consumer expectation test - is meritless because the court also instructed the jury on that test.

## V. Volkswagen's Cross-Appeal

Because we reject Davis's challenges to the judgment entered in Volkswagen's favor, we do not reach Volkswagen's cross-appeal.

_____

[9] No one argues on appeal that the trial court erroneously instructed the jury on the consumer expectation test and we therefore do not address this issue.

Judgment affirmed.

Judge Bowes joins the memorandum.

Judge Stabile joins the memorandum and files a concurring statement in which

Judge Bowes joins.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/19